## GEORGE MOORE ICE CREAM CO., INC. *v.* ROSE, COLLECTOR OF INTERNAL REVENUE.

No. 675.  Argued April 19, 20, 1933.—Decided May 8, 1933.

374

*Mr. J. C. Murphy* for petitioner.

*Mr. Paul D. Miller,* with whom *Solicitor General Thacher* and *Messrs. Sewall Key* and *J. P. Jackson* were on the brief, for respondent.

By leave of Court, *Messrs. John G. Buchanan* and *Paul G. Rodewald* filed a brief as *amici curiae.*

Mr. Justice Cardozo delivered the opinion of the Court.

The petitioner, a corporation, brought suit against the respondent, a Collector of Internal Revenue, to recover income and profits taxes alleged to have been wrongfully collected. A demurrer by the Collector was sustained in the District Court upon two grounds: first, that the payment of the taxes had been made without protest; and second, that the original claim for refund filed with the Commissioner was defective and that amendment came too late. The Circuit Court of Appeals upheld the decision upon the second ground without passing on the first. 61 F. (2d) 605. The case is here on certiorari.

On April 1, 1918, the petitioner filed its return for the year 1917, disclaiming any tax liability. The Commissioner of Internal Revenue, auditing the return, found a tax liability in the sum of $6,871.18, and assessed a tax accordingly. The respondent, after notice of the assessment, made demand upon the taxpayer, giving notice that there would be distraint and sale unless payment was made within ten days. On November 5, 1923, the taxpayer yielded to the demand, moved by the desire to avoid the seizure of its property, but without protest to the Collector that the tax was illegal, either wholly or in part. Four years later, on November 5, 1927, it filed a claim for refund with the Commissioner, and on November 13, 1928, an amended claim, amplifying and making more specific the statements of the first one. The claims were rejected by the Commissioner, though a revenue agent had reported that a refund was due in the sum of $4,551.01. The petitioner alleges that the payment was excessive to that extent and sues the Collector for the moneys overpaid.

At common law, and for many years under the federal statutes, protest at the time of payment was a condition precedent to the recovery of a tax. *Elliott* v.

*Swartwout,* 10 Pet. 137, 153; *Curtis's Adm'x* v. *Fiedler,* 2 Black 461; *Chesebrough* v. *United States,* 192 U.S. 253; *United States* v. *N.Y. & Cuba Mail S.S. Co.,* 200 U.S. 488. The rule persisted till 1924, when it was abolished by the Revenue Act of that year, with a proviso that pending suits should be unaffected by the change. Revenue Act of 1924, c. 234, 43 Stat. 253, 343, § 1014, amending R.S. § 3226; [1] 26 U.S.C., § 156. This suit was not begun till March, 1931, and is thus outside of the proviso. Even so, the payment to be recovered was made in 1923, when protest was still necessary. The petitioner contends that the new rule applies to all suits begun after the adoption of the amendment. The Government contends that the old rule survives if the payment was before the amendment, though the suit was begun afterwards.

---

[1] Section 1014. (a) Section 3226 of the Revised Statutes, as amended, is amended to read as follows:

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail."

(b) This section shall not affect any proceeding in court instituted prior to the enactment of this Act.

We think the intention of the Congress was to remove the requirement of protest in any suit thereafter brought, irrespective of the date of the underlying payment.[2]

The tokens of intention are within the statute and outside of it.

Of the tokens within the statute, the saving clause, (b), is entitled to a leading place. "This section shall not affect any proceeding in court instituted prior to the enactment of this act." The implication is that any proceeding not covered by the exception is to be subject to the rule. *Moses* v. *United States*, 61 F. (2d) 791, 794. Cf. *Brown* v. *Maryland*, 12 Wheat. 419, 438. But there are other tokens, and tokens still within the statute, that point the same way. The phraseology of the section in all its parts imports a regulation of procedure. No suit "shall be maintained" until a claim for refund or credit has been filed with the Commissioner. If such a claim has been filed, suit may be "maintained," though there was neither protest nor duress. Even pending actions would commonly be covered by such words. "To maintain a suit is to uphold, continue on foot, and keep from collapse a suit already begun." *Smallwood* v. *Gallardo*, 275 U.S. 56, 61. If suits already begun are taken out by an exception, to "maintain" can mean no less than to prosecute with effect, without reference to the date of the transaction at the root. *Collector* v. *Hubbard*, 12 Wall. 1, 14. In saying this we speak of the inference to be drawn when the balance is not shifted by countervailing weights. None can be discovered here. There could

[2] In the lower federal courts the decisions are conflicting. Most of them have taken the view adopted here. *Beatty* v. *Heiner*, 10 F. (2d) 390; *Warner* v. *Walsh*, 24 F. (2d) 449; *Hyatt Roller Bearing Co.* v. *United States*, 43 F. (2d) 1008; *Weir* v. *McGrath*, 52 F. (2d) 201; *Electric Storage Battery Co.* v. *McCaughn*, 52 F. (2d) 205; cf. *Winant* v. *Gardner*, 29 F. (2d) 836; *Moses* v. *United States*, 61 F. (2d) 791. Contra: *Warner* v. *Walsh*, 27 F. (2d) 952.

be no denial by anyone that transactions antedating the statute would be subject to the rule that the suit is not maintainable without the filing of a claim. The inference is cogent that the same transactions are covered when it is said in the same sentence that the suit *may* be maintained without evidence or averment of protest or duress. There is a unity of verbal structure that is a symptom of an inner unity, a unity of plan and function. The field of operation is not shifted between the clauses of a sentence.

If we turn to extrinsic tokens of intention, and view the statute in the light of its history and aims, the signposts are the same. The requirement of protest as it stood before the statute was not limited to suits against a collector of internal revenue or other public officer. It extended and was often applied to suits against the Government itself. Even in suits against the Collector, the United States was almost always the genuine defendant, the liability of the nominal defendant being formal rather than substantial. In this situation the Government was unjustly enriched at the expense of the taxpayer when it held on to moneys that had been illegally collected, whether with protest or without. So at least the lawmakers believed, and gave expression to that belief, not only in the statute, but in Congressional reports. Senate Report, No. 398, 68th Congress, First Session, pp. 44, 45; [3] House Report, No. 179, 68th Con-

---

[3] The Senate Report contains the following:

"Section 1114. The provisions of Section 1318 of existing law have been amended to provide that after the enactment of the bill it shall not be a condition precedent to the maintenance of a suit to recover taxes, sums, or penalties paid, that such amounts shall have been paid under protest or duress. The fact protest was made has little bearing on the question whether the tax was properly or erroneously assessed. The making of such a protest becomes a formality so far as well advised taxpayers are concerned and the requirement of it may operate to deny the just claim of a taxpayer who was not well informed."

gress, First Session, pp. 33, 34. The amendment was designed to right an ancient wrong. It did not draw a distinction between suits against the body politic and suits against a public officer who was to be paid out of the public purse. It put them in a single class, and made them subject to a common rule. A high-minded Government renounced an advantage that was felt to be ignoble, and set up a new standard of equity and conscience. There was no thought to discriminate between payments made and those to come. A fine sense of honor had brought the statute into being. We are to read it in a kindred spirit. *United States* v. *Emery Realty Co.,* 237 U.S. 28, 32.

The argument is made that power was lacking, though intention be assumed. Defect of power is not suggested where the claim for restitution is against the Government itself. The case assumes another aspect, we are told, when the suit is against an officer who is to be personally charged. Until 1924, a Collector was not liable to a taxpayer for a tax illegally collected unless protest gave him notice that he was a party to a wrong. The Government suggests that there is an infraction of the Fifth Amendment, a denial of due process, if liability is cast upon him after the event. There is a subsidiary point that at least the doubt is so great as to canalize construction along the course of safety. *United States* v. *La Franca*, 282 U.S. 568, 574; *United States* v. *Jin Fuey Moy*, 241 U.S. 394, 401. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *United States* v. *Jin Fuey Moy, supra.* But avoidance of a difficulty will not be pressed to the point of disingenuous evasion. Here the intention of the Congress is revealed too distinctly to permit us to ignore it because of mere misgivings as to power. The problem must be faced and answered.

As applied to this respondent in the circumstances of his official action stated in the record, the statute is constitutional though its effect is to broaden liability both for the past and for the future. As the law stood before later statutes, the taxpayer's protest was notice to a Collector that suit was about to follow, and was warning not to pay into the Treasury the moneys collected. *Elliott* v. *Swartwout, supra; Smietanka* v. *Indiana Steel Co.*, 257 U.S. 1, 4. Statutes first enacted in 1839 (Act of March 3, 1839, c. 82, § 2, 5 Stat. 348) and progressively broadened (R.S., § 3210; 26 U.S.C., § 140), made it the duty of Collectors to pay the money over to the Government, whether there had been protest or no protest. At first this was thought to have relieved them of personal liability (*Cary* v. *Curtis*, 3 How. 236; *Smietanka* v. *Indiana Steel Co., supra*), but later acts of Congress established a different rule, though maintaining the duty to make remittance to the Treasury. *Philadelphia* v. *Collector,* 5 Wall. 720, 731; *Curtis's Adm'x* v. *Fiedler*, 2 Black 461, 479; *Collector* v. *Hubbard, supra; Arnson* v. *Murphy*, 109 U.S. 238, 241; 5 Stat. 727; 12 Stat. 434, 725, 729; 12 Stat. 741, § 12; 13 Stat. 239; 14 Stat. 329, § 8. Along with the duty there went a pledge of indemnity by the Government itself, a pledge not absolute, it is true, but subject to a condition. 12 Stat. 741, § 12; *United States* v. *Sherman,* 98 U.S. 565; *Philadelphia* v. *Collector, supra,* p. 733; *Smietanka* v. *Indiana Steel Co., supra.* The condition was that a certificate be granted by the court either (a) that there was probable cause for the act done by the Collector or other officer, or (b) that he acted under the directions of the Secretary of the Treasury or other proper officer of the Government. 12 Stat. 741, § 12; Act of March 3, 1863. In that event no execution was to issue upon the judgment, but the amount of the recovery was to be paid out of the Treasury. The pledge of indemnity was carried forward into

the Revised Statutes with only verbal changes (R.S. 989), and stands upon the books today. 28 U.S.C., § 842.[4] The effect of the certificate, when given, is to convert the suit against the Collector into a suit against the Government. *United States* v. *Sherman, supra.*

This Collector did act under the directions of the Secretary of the Treasury, or other proper officer of the Government in the collection of the tax. The complaint shows upon its face that the tax had been duly assessed by the Commissioner of Internal Revenue. In that situation the Collector was under a ministerial duty to proceed to collect it. R.S. § 3182; 26 U.S.C., § 102; *Erskine* v. *Hohnbach,* 14 Wall. 613. There was nothing left to his discretion. Other duties less definitely prescribed may leave a margin for judgment and for individual initiative. Cf. *Agnew* v. *Haymes,* 141 Fed. 631. There was no such margin here. His duty being imperative, he is protected by the command of his superior from liability for trespass (*Erskine* v. *Hohnbach, supra; Haffin* v. *Mason,* 15 Wall. 671, 675; *Harding* v. *Woodcock,* 137 U.S. 43, 46), and is entitled as of right to a certificate converting the suit against him into one against the Government. *United States* v. *Sherman, supra.* His position could be no better if there had been protest at the time of payment. He would still have been under a duty to obey the command of his superior and collect the tax assessed. Also he would

---

[4] § 842. When a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him, or for the recovery of any money exacted by or paid to him and by him paid into the Treasury, in the performance of his official duty, and the court certifies that there was probable cause for the act done by the collector or other officer, or that he acted under the directions of the Secretary of the Treasury, or other proper officer of the Government, no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the Treasury.

still have been under a duty to make prompt remittance to the Treasury. There had been confided to him no power to review or to revise. *Erskine* v. *Hohnbach,,supra; Harding* v. *Woodcock, supra.* The case is not one for a certificate of probable cause, as it might be if the officer had trespassed under a mistaken sense of duty. In such circumstances a certain latitude of judgment may be accorded to the certifying judge, though even then it is enough that a seizure has been made upon grounds of reasonable suspicion. *Locke* v. *United States,* 7 Cranch 339; *Agnew* v. *Haymes, supra; Carroll* v. *United States,* 267 U.S. 132, 149; *Dumbra* v. *United States,* 268 U.S. 435, 441. One does not speak of probable cause when justification is complete. Here the certifying judge will be subject to a specific duty upon the facts admitted by the demurrer to relieve the Collector of personal liability and to shift the burden to the Treasury. This court has often held that a pledge of the public faith and credit will permit the seizure of property by right of eminent domain, though what is due for compensation must be ascertained thereafter. *Sweet* v. *Rechel,* 159 U.S. 380; *Crozier* v. *Krupp,* 224 U.S. 290; *Joslin Mfg. Co.* v. *Providence,* 262 U.S. 668, 677; *Dohany* v. *Rogers,* 281 U.S. 362, 366; *Hurley* v. *Kincaid,* 285 U.S. 95, 104, 105. The assurance of indemnity is as ample, the reparation prompter and more summary, upon the facts before us here.

A suit against a Collector who has collected a tax in the fulfilment of a ministerial duty is today an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. *Philadelphia* v. *Collector, supra,* p. 731. There may have been utility in such procedural devices in days when the Government was not suable as freely as now.

*United States* v. *Emery, supra; Ex parte Bakelite Corp.,*
279 U.S. 438, 452; Act of February 24, 1855, c. 122, 10
Stat. 612, §§ 1 and 9; Judicial Code, § 145; 28 U.S.C.,
§ 250; Judicial Code, § 24 (20); 28 U.S.C., § 41 (20).
They have little utility today, at all events where the
complaint against the officer shows upon its face that in
the process of collecting he was acting in the line of
duty, and that in the line of duty he has turned the
money over. In such circumstances his presence as a
defendant is merely a remedial expedient for bringing
the Government into court.

The case comes down to this: In its application to
this Collector the amendment of 1924 has left the law
the same as it had been for many years. There has been
no change to his detriment in the definition of rights and
wrongs. His conduct must have been the same though
the statute had been on the books from the beginning.
There has not even been any change to his detriment in
the law of remedies. Execution can never issue against
him upon any judgment recovered in favor of the tax-
payer. The Government has enlarged the remedy against
itself by dispensing with what was once an indispensable
formality. As to subordinate officials who have acted
in the line of duty it has made the change innocuous by
assuming liability. One who is brought before the court
as a formal party only will not be heard to object that
there has been a denial of due process in enlarging the
liability to be borne by some one else. Enough that the
legislation is valid as to him, whether it be valid or
invalid in its bearing upon others.

The decision of this case does not require us to deter-
mine whether the Act of 1924 would affect the respond-
ent's liability if the certificate of the court converting the
suit into one against the Government were dependent upon
controverted facts, or upon facts permitting different in-
ferences or calling upon the judge to exercise discretion.

No such situation is presented by the record now before us. Indeed, no such situation, it would seem, can ever be presented where a Collector has done no more than accept payment of a tax assessed by a superior who has been invested by the statute with power to command. Our duty does not require us to deal with problems merely hypothetical. If a case should develop where a certificate might issue as a matter of discretion, other questions would be here. There would then be need to consider whether the objection of a denial of due process would be open to a Collector until a request for the certificate had been made and refused. "Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment." *American Surety Co.* v. *Baldwin*, 287 U.S. 156, 168; *York* v. *Texas*, 137 U.S. 15, 20. There would be need also to consider whether in its application to an officer acting of his own motion, and not in the fulfilment of the command of a superior, the requirement of protest is a procedural limitation upon the remedy for a wrong, or one of the substantive elements of the wrong itself. We leave those questions open.

■ The Government contends that the claim for refund filed by the petitioner with the Commissioner of Internal Revenue was not subject to amendment after the time had gone by when a claim wholly new would have been barred by limitation.

The claim in its original form gave notice of specific errors in the adjustment of invested capital. It gave notice also in general terms that aside from any errors in the adjustment of the capital there had been an erroneous assessment of net income at the sum of $16,940.18, when in fact there had been a loss. We think the statements as to income were subject to amendment. *United States* v. *Memphis Cotton Oil Co.*, 288 U.S. 62; *United States* v. *Factors & Finance Co.*, 288 U.S. 89.

The judgment is                                    *Reversed.*