**BUTLER et al. v. CARNEY, and four other cases.**

Nos. 6375, 6646, 6644, 6645, 6661.

District Court, D. Massachusetts.
Dec. 2, 1936.

Edward R. Hale, of Boston, Mass., for plaintiffs in Nos. 6375, 6644, and 6645.

Edward R. Hale and Bennett Sanderson, both of Boston, Mass., for plaintiff in No. 6646.

Fox & Orlov, of Boston, Mass., for plaintiff in No. 6661.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to Atty., both of Boston, Mass., Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and Arthur P. Curran, Sp. Assts. to Atty. Gen., for defendants.

BREWSTER, District Judge.

These five suits were brought to recover taxes illegally collected under the provisions of the Agricultural Adjustment Act, and the Act as amended, 7 U.S.C.A. § 601 et seq.

The case of William M. Butler et al. v. Carney, No. 6375, was begun by a writ dated April 22, 1935. Both processing taxes and floor stocks taxes are involved. The plaintiffs allege that they have filed claims for the refund of these taxes on the ground that the act imposing them was beyond the powers of Congress under the Constitution of the United States, and that their claims have been reiected by the Commissioner of Internal Revenue. The defendant in this

134

case at first filed an answer, but has been allowed to withdraw his answer and substitute a demurrer.

The three cases brought by the Quissett Mill contain substantially similar allegations. The writs in these suits were dated January 13, 1936. As in the Butler case, both processing taxes and floor stocks taxes are involved.

The case of Hodgman Rubber Co. v. Carney involves floor stocks taxes only. The writ is dated January 10, 1936. The plaintiff's allegations do not differ materially from those in the other cases.

To each of these declarations the defendant has filed a demurrer on the grounds that this court lacks jurisdiction to hear and determine the controversy and that the facts, as stated therein, fail to set forth a cause of action.

It is the contention of the defendants that the provisions of title 7 of the Revenue Act of 1936 (sections 901–917 [7 U.S.C.A. §§ 623 note, 644–659]) are applicable to all of these suits and operate both to take away the jurisdiction of this court to hear these cases and to take away the right of the various plaintiffs to any recovery under the facts as set forth in their various declarations. The plaintiffs, on the other hand, contend that if these provisions of the Revenue Act of 1936 are applicable, they are unconstitutional, and of no effect.

In title 7 of the Revenue Act of 1936, provision is made for refunds of amounts collected under the Agricultural Adjustment Act. Section 902 (7 U.S.C.A. § 644) provides:

"Section 902. *Conditions on Allowance of Refunds.* No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act [this chapter], unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906 [section 648 of this title], as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act [this chapter], or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act [this chapter], or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

Section 903 (7 U.S.C.A. § 645), dealing with the filing of claims, provides:

"Section 903. *Filing of Claims.* No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act [this chapter] unless, after the enactment of this Act [June 22, 1936], and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary."

Section 904 (7 U.S.C.A. § 646) provides limitations upon the time of bringing suit:

"Section 904. *Statute of Limitations.* Notwithstanding any other provision of law, no suit or proceeding, whether brought before or after the date of enactment of this Act [June 22, 1936], shall be brought or maintained in any court for the recovery, recoupment, set-off, refund, or credit of, or counterclaim for, any amount paid by or collected from any person as tax (except processing tax, as defined herein) under the Agricultural Adjustment Act [this chapter]. (a) before the expiration of eighteen months from the date of filing a claim therefor under this title [section 645 of this title], unless the Commissioner renders a decision thereon within that time, or."

Section 906 (7 U.S.C.A. § 648) provides a special administrative remedy for the recovery of amounts paid as processing taxes. This section has no application to the recovery of amounts paid as floor stocks taxes.

"Section 906. *Procedure on Claims for Refunds of Processing Taxes* (a) Notwithstanding any other provision of law, no suit or proceeding, whether brought before or after the date of the enactment of this Act [June 22, 1936], shall be brought or maintained in any court for the refund of any amount paid or collected as processing tax, as defined herein [in section 655 of this title], under the Agricultural Adjustment Act [this chapter], except as provided in this section."

The Commissioner is given three years in which to act upon such claims after they have been filed. A Board of Review is created, to consist of nine persons, to be officers or employees of the Treasury Department, designated to act by the Secretary of the Treasury. The Commissioner's allowance or disallowance of any claim is to be final, unless within three months the claimant files a petition with this Board of Review requesting a hearing on the merits of his claim, in whole or in part. The claimant is then allowed to appeal to the appropriate Circuit Court of Appeals, which is given exclusive jurisdiction to modify the decision of the Board of Review, if it is found to be not in accordance with law. Provision is made for taking any extra evidence before the Board of Review, if this becomes necessary.

Section 910 (7 U.S.C.A. § 652) abolishes the liability of Collectors under all circumstances:

"Section 910. *Liability of Collectors.* No collector of internal revenue or customs, or internal revenue or customs officer or employee, shall be in any way liable to any person for any act done by him in the assessment or collection of any amount as tax under the Agricultural Adjustment Act [this chapter], or for the recovery of any money exacted by or paid to him and paid into the Treasury, in performance of his official duties under the provisions of such Act, or if such collector or officer acted under the direction of the Secretary or other proper officer of the Government."

So far as refunds of processing taxes are concerned, there is no doubt that the words of section 906 (7 U.S.C.A. § 648) apply to all applications for refunds, whether pending before the courts at the time of the passage of the act or not. The statute expressly so states. In addition there is a prohibition against "maintaining" any suit or proceeding. It has been held that such language includes suits already begun at the time of the passage of the act.

Smallwood v. Gallardo, 275 U.S. 56, 48 S. Ct. 23, 72 L.Ed. 152. As to the recovery of amounts paid as floor stocks taxes, there is more difficulty. The language of section 902 (7 U.S.C.A. § 644) does not differ, in this particular, materially from that used in section 21 (d) (1) of the Agricultural Adjustment Act, as amended (7 U.S.C.A. § 623 (d) (1). It has been held that the latter statute has no application to suits begun before its passage. Wilkes Barre Lace Mfg. Co. v. Mundy (D.C.) 13 F.Supp. 870. Section 21 (d) of the Agricultural Adjustment Act (7 U.S.C.A. § 623 (d), moreover, is now expressly repealed by section 901 of the Revenue Act of 1936 (7 U.S.C.A. § 623 note). The same considerations are perhaps applicable to section 903 (7 U.S.C.A. § 645) relative to the filing of claims. Section 904 (7 U.S.C.A. § 646), however, provides that no suit or proceeding, whether begun before or after the passage of the act, may be begun or maintained "before the expiration of eighteen months from the date of filing a claim therefor under section 645 of this title." The effect of this language would appear to be to cut off any proceedings pending at the time of the passage of the act.

It is necessary to decide, therefore, whether any violation of the Constitution of the United States is involved in the statutes quoted above. In the first place, the plaintiffs contend that the effect of section 910 (7 U.S.C.A. § 652), quoted above, is to deprive them of a common-law right against the collector of internal revenue, and that consequently they are deprived of property without due process of law. Since these suits are all brought against former collectors of internal revenue, I shall first consider the present status of suits against collectors of internal revenue.

At common law an aggrieved taxpayer, who had paid an illegal assessment under protest, could bring an action of assumpsit, for money had and received, against the collector to whom he had paid the money. Elliott v. Swartwout, 10 Pet. 137, 9 L.Ed. 373. In 1839, however, a statute was passed making it the duty of collectors to turn over to the Secretary of the Treasury all amounts received as taxes, whether paid under protest or not. This statute was held to have the effect of abolishing the common-law right of action against the collector. Cary v. Curtis, 3 How. 236, 11 L.Ed. 576; Curtis v. Fiedler, 2 Black, 461, 478, 17 L.Ed. 273; The Collector v. Hubbard, 12 Wall. 1, 20 L.Ed. 272. The court said in Curtis v. Fiedler, supra:

"But the law never implies a promise to pay unless some duty creates such an obligation, and more especially it never implies a promise to do an act contrary to duty or contrary to law. Collectors under the act referred to were required to pay all moneys received for unascertained duties or for duties paid under protest into the Treasury of the United States, and consequently this Court held that in a case arising under that law, where that duty had been performed by the collector, the law would not imply a promise on his part to pay the same back to the importer, because he was under no obligation to pay the money twice, and to have paid the same ·back to the importer in the first place would have been contrary to his official duty as prescribed by an Act of Congress."

Subsequently legislation authorizing the Commissioner to pay back sums collected by judgments against collectors of internal revenue was construed as giving statutory authority to bring such suits. Philadelphia v. The Collector, 5 Wall. 720, 18 L.Ed. 614. But the exact nature of such a suit was for some time in doubt. The matter now appears settled by Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265. In that case, suit was brought against a collector of internal revenue to recover income and profits taxes alleged to have been wrongfully collected. The defendant demurred on the ground that the money had not been paid under protest. Subsequent to the payments in question, but before suit was begun, Congress had abolished the requirement of protest in suits against a collector. The lower courts sustained the defendant's demurrer. It was argued by the Government that as applied to payments made before the statute was passed, such a statute deprived the collector of property without due process of law, and was unconstitutional. The Supreme Court, after holding the language of the statute broad enough to cover all payments, whether made before or after its passage, held that a suit against a collector, where it appeared on the face of the pleadings that the collector would be entitled to exoneration as a matter of right, was merely a method of bringing the Government into court, and that in all such cases the collector was not deprived of any property by the abolition of the requirement of protest as a defense. The court said, 289 U.S. 373, at page 382, 53 S.Ct. 620, 623, 77 L.Ed. 1265:

"A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is, made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. Collector, supra, 5 Wall. 720, at page 731, 18 L. Ed. 614. There may have been utility in such procedural devices in days when the government was not suable as freely as now. * * * They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court."

It will be noted that section 910 of the Revenue Act of 1936 (7 U.S.C.A. § 652) only purports to abolish the collector's liability in those cases where he has acted, either in performance of his official duties or under the direction of the Secretary or other proper officer of the Government. In other words, the collector's liability is abolished only in those cases in which the collector would have been entitled as of right to a certificate turning the suit into one against the Government. It is impossible to reconcile the Moore Ice Cream Co. Case with the theory urged by the plaintiffs that a common-law right exists against the collector. Such a common-law right ceased to exist many years ago. The present suits must be regarded as essentially suits against the Government.

As to the requirements of the Revenue Act of 1936 in obtaining refunds, certain provisions, with which the plaintiffs have made no attempt to comply, are unquestionably within the powers of Congress, standing alone.

The plaintiffs contend, however, that all such provisions are a part of the general framework set up by title 7 for the recovery of taxes imposed by the Agricultural Adjustment Act, and that the effect of title 7 in its entirety is to make it practically impossible for anybody who has paid any such taxes to recover the amounts so paid. The plaintiffs complain that this is a deprivation of their rights under the Fifth Amendment.

That the United States may not be sued without its consent is not, of course, open to question. Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government may be determined by the courts. United States v. Clarke, 8 Pet. 436, 8 L.Ed. 1001; Cheatham v. United States, 92 U.S. 85, 23 L.Ed. 561; Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108; Price v. United States, 174 U.S. 373, 19 S.Ct. 765, 43 L.Ed. 1011.

One who seeks to sue the United States must show that his case is clearly within the terms of the statute in which the Government consents to be sued. Eastern Transp. Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; Ginochio v. United States (C.C.A.7, 1934) 74 F.(2d) 42. It has been held that filing of a claim for refund may be made a condition precedent to the right to sue the Government for taxes illegally collected, and that in such a case the requirements of a statute must be strictly followed before the taxpayer may bring suit. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025.

Since Congress has the undoubted power to withdraw at any time its consent to be sued, it logically follows that it may impose new conditions upon which its consent is granted.

The plaintiffs contend that their right to bring suit to recover illegally exacted taxes is a vested substantive right, and that to take away such a right is a violation of the provisions of the Fifth Amendment. ·Some such theory is apparently the basis of one recent case involving the same facts as the present case. Chas. W. Priddy & Co., Inc., v. Early [1] (October 29, 1936, D.C.E.D.Va.) reported in 1936 C.C.H.Federal Tax Service, par. 9495. I am unable to agree, however, with this argument. In Lynch v. United States, 292 U.S. 571, at page 581, 54 S.Ct. 840, 844, 78 L.Ed. 1434, it is said:

"Although consent to sue was thus given when the policy issued, Congress retained power to withdraw the consent at any time. For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. DeGroot v. United States, 5 Wall. 419, 432, 18 L.Ed. 700."

In Lynch v. United States, supra, it was held that although Congress might alter or take away the remedy at its pleasure, it could not repudiate the obligations of the Government on war risk insurance policies and that, in the statute under consideration in that case, no intention was shown to take away the remedy, should Congress be held without power to repudiate the obligation. No similar contention could here be made. The statute is clearly intended as a limitation upon the right to sue the Government. To hold otherwise would be to violate the plain wording of the statute. It follows that title 7 of the Revenue Act of 1936 is not unconstitutional in so far as it forbids the maintenance of these suits. The same result has been reached in a similar case, although on a somewhat different line of reasoning, in Lincoln Mills v. Davis, 15 F.Supp. 257 (D.C.N.D.Ala.).

The statute does not operate to extinguish vested rights of the plaintiffs. These rights persist, even though the United States has withdrawn its consent to be sued in this court. Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335; Lynch v. United States, supra.

In the Perry Case, the court observed (294 U.S. 330, at page 354, 55 S.Ct. 432, 436, 79 L.Ed. 912, 95 A.L.R. 1335):

"The fact that the United States may not be sued without its consent is a matter of procedure which does not affect the legal and binding character of its contracts. While the Congress is under no duty to provide remedies through the courts, the contractual obligation still exists, and, despite infirmities of procedure, remains binding upon the conscience of the sovereign."

So far as we are concerned with the processing tax, Congress has provided administrative remedies with judicial review upon questions of law. Whether these remedies are adequate or violative of any provision of the Constitution are questions which this court is without jurisdiction to entertain, in view of section 906 (7 U.S.C.A. § 648).

The demurrers in the above-entitled cases are sustained.

---

[1] No opinion for publication.