The FIRST NATIONAL BANK OF EMLENTON, PENNSYLVANIA, Plaintiff,

v.

UNITED STATES, Defendant.
Civ. A. No. 504.

United States District Court
W. D. Pennsylvania.
March 28, 1958.

McFate, McFate & McFate, Oil City, Pa., for plaintiff.

D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

The plaintiff is The First National Bank of Emlenton, Pennsylvania, which has its place of business in the Western District of Pennsylvania. It sued the United States for the sum of $7,359.49, claiming that it was entitled to this sum because of its chattel mortgage on certain personal property seized and sold by the District Director of Internal Revenue.

The case came on for trial at Erie nonjury. At the pretrial conference the admitted allegations in the pleadings were introduced into evidence and the other facts essential to a decision have been stipulated by the parties. The facts are:

On May 3, 1955, the District Director of Internal Revenue for the Western District of Pennsylvania posted a notice of sale for property seized from the Barrett Machine Tool Corporation, Meadville, Pennsylvania, for the non-payment of delinquent withholding taxes. The Government issued warrants on all of its tax liens and the sale was held June 3, 1955, at Meadville. The proceeds realized at the sale amounted to $25,500, which was paid by the purchaser, one Phillip Noll. The property sold was encumbered by a chattel mortgage of the plaintiff. The unpaid balance on this chattel mortgage was $50,500. The Government had eleven tax liens against the delinquent mortgagor in the sum total of $33,177.42. Of these eleven tax liens, four were filed prior to the filing of the chattel mortgage on the following respective dates: No. 1, May 27, 1949; No. 2, January 14, 1953; No. 3, June 17, 1953; No. 4, September 3, 1953. Plaintiff's valid chattel mortgage on the machinery and equipment of Barrett Machine Tool Corporation was duly entered of record on December 29, 1953, in the Office of the Prothonotary of Crawford County, Meadville, Pennsylvania. The remaining seven tax liens totaling $12,553.39 were filed at various dates from February 4, 1954, to February 24, 1955. The District Director was paid the sale price in the sum of $25,500. He then paid the costs of sale which came to $1,349.33. Then he applied the residue of the fund to all the Government liens, $16,791.18 being paid to satisfy those Government tax liens which were recorded prior to the recording of the chattel mortgage and the remaining $7,359.49 was applied to those liens which were filed and recorded subsequent to the filing of the chattel mortgage.

The plaintiff made demand for those proceeds in excess of the costs and the first four prior recorded liens. This demand was refused and plaintiff filed its complaint on May 6, 1957.

The Government says that the first question presented is whether the court has jurisdiction over a suit brought by a non-taxpayer to recover money realized by the United States in a distraint sale of the taxpayer's interest in personal property. The Government's contention is that there is no jurisdiction in this court. At the pretrial the Government moved to dismiss for lack of jurisdiction. The defendant refers to the Internal Revenue Code of 1954, Section 6331, 26 U.S.C.A., which authorizes the Secretary or his delegate to levy and distrain upon all property and rights to property in order to collect the same. It was under this section that the Director proceeded in the instant case. Plaintiff in the complaint asserts that jurisdiction for this action is found in 28 U.S.C.A. §§ 1340 and 1346(a) (1) and (2).

Plaintiff poses two questions for decision. They are: (1) Can a mortgage lien creditor sue the United States for a part of the proceeds received from a tax sale of property when the District Director of Internal Revenue has wrongfully applied those proceeds toward the payment of taxpayer's subsequent delinquent taxes instead of in payment of the prior mortgage lien? (2) When a District Director of Internal Revenue sells a taxpayer's property upon warrants issued on Government tax liens, some of which are prior to and some subsequent to plaintiff's mortgage lien on the property and the Government receives proceeds in excess of the prior liens and costs of

sale, should the District Director pay those excess proceeds in satisfaction of the plaintiff's lien before applying those excess proceeds toward the subsequent tax liens?

The first question posed by plaintiff relates to the jurisdiction and the second to the merits of the case. As the plaintiff says, to decide the preliminary question of jurisdiction, that is, the right to sue the Government, it must be conceded for present purposes that the District Director has wrongfully distributed the proceeds of the sale in disregard of a valid lien on the property and that plaintiff is entitled to the proceeds.

Plaintiff, of course, is in agreement with the general well-established principle that the United States, like any other sovereign, may not be sued without its consent and when it consents by act of Congress, the action may be brought only in the court designated by that body. However, plaintiff asserts that authority for the suit has been clearly expressed and it is found in the following statutes:

(1) Congress has given the District Court general jurisdiction over the subject matter of actions arising under the Internal Revenue laws of the United States: 28 U.S.C.A. § 1340 provides as follows:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court. June 25, 1948, c. 646, 62 Stat. 932."

(2) The District Court is given original jurisdiction concurrent with the Court of Claims in Act of Congress, 28 U.S.C.A. § 1346(a) (1), which reads as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws; * * * ".

(3) This same Act, 28 U.S.C.A. at Section 1346(a) (2), provides for jurisdiction as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

*   *   *   *   *   *

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

(4) The Court has jurisdiction to render a judgment in this case, says the plaintiff, under authority of 28 U.S.C.A. § 2463, which reads as follows:

"All property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof. June 25, 1948, c. 646, 62 Stat. 974."

Defendant in answer to plaintiff's contentions on the jurisdictional question stresses that plaintiff is not a taxpayer. It points to 1346(a) (1) as authorizing suit by a taxpayer only and 1346(b) is, of course, the Federal Tort Claims Act under which plaintiff cannot qualify because of 28 U.S.C.A. § 2680(c), which excludes from the Tort Claims Act any claim arising in respect of the assessment or collection of any tax, etc. Defendant also points to Section 1346(a) (2) and says that plaintiff cannot qualify there because there is no express or implied contract in the instant case by

which the United States has agreed to pay over the money plaintiff seeks. It should be mentioned at this point that the Government also contends that Section 7422, 26 U.S.C.A., bars plaintiff because plaintiff did not and could not file a claim for refund which is a prerequisite to bringing suit under 1346(a) (1). However, it is believed under the facts that plaintiff made a demand for the money upon the Director and that it was refused.

Counsel have not pointed to any decision precisely deciding the jurisdictional point raised by defendant. There are a number of decisions in which a Collector of Internal Revenue, now the Director, is named defendant and no question as to the jurisdiction arose. This is so in decisions involving alleged wrongful distribution of the proceeds of a distraint sale. Horvitz v. Granger, D.C., 134 F.Supp. 957. There are any number of cases in the books indicating that a taxpayer or a lien holder or other person having an interest in the subject matter of the sale has brought suit against the Collector. These cases are illustrated by the line of cases, Stuart v. Chinese Chamber of Commerce of Phoenix, 9 Cir., 168 F.2d 709; Raffaele v. Granger, 3 Cir., 196 F.2d 620, and Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265.

There is no authoritative decision which holds that the United States can be sued as the result of the wrongful distribution by the Director of funds realized from a distraint sale under the summary procedures. It is noticed at this point that the code provides for the distribution of the money realized in a distraint sale by Section 6342(b), 26 U.S.C.A.

The language in several recent decisions refers generally to the theory of law that is stated in Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 435, 2 L.Ed.2d 503, that:

"* * * Generally, judicial relief is available to one who has been injured by an act of the government official which is in excess of his expressed or implied powers. [Citing cases.] The District Court had not only jurisdiction to determine its jurisdiction but also power to construe the statutes involved to determine whether the respondent did exceed his powers."

The decision, however, is a case in which the Secretary of the Army was the defendant, not the United States.

Plaintiff points to Szerlip v. Marcelle, D.C., 136 F.Supp. 862, 863, by Judge Bruchhausen, as follows:

"It is settled law that nondelinquent third-parties, whose property has been taken by the Collector of Internal Revenue for the tax liability of another, may maintain actions in the Federal District Courts under this section, to stay the sale thereof, without being bound by provisions of the Internal Revenue Code forbidding suits restraining the assessment of tax (now Sec. 7421 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7421). Long v. Rasmussen, D.C.Mont., 281 F. 236; Rothensies v. Ullman, 3 Cir., 110 F.2d 590; Tomlinson v. Smith, 7 Cir., 128 F.2d 808; Raffaele v. Granger, 3 Cir., 196 F.2d 620."

In the cited case the court refers to 28 U.S.C.A. § 1340 and "former similar statutes in the Judiciary Code, giving Federal District Courts jurisdiction of any civil action arising under an Act of Congress providing for internal revenue." But in this case the plaintiff Sidney Szerlip sued Joseph P. Marcelle as *Collector of Internal Revenue, defendant.*

The revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers and not to non-taxpayers. With them Congress does not assume to deal, and they are neither of the subject nor of the object of the revenue laws. See Stuart v. Chinese Chamber of Commerce of Phoenix, supra.

Szerlip v. Marcelle, supra, and Horvitz v. Granger, supra, are examples of suits

by nontaxpayers against Collectors of Internal Revenue. The law expressed in the decisions of the various cases is that a taxpayer is bound by the revenue law and must proceed thereunder. A nontaxpayer having a pecuniary interest in the subject matter of a distraint sale may sue the Collector for any wrong committed by him in seizing property or property rights. Plaintiff in the instant case comes within the decision law in this respect, except that its case was filed directly against the United States. No doubt plaintiff should have judicial review of the method and application of the money realized by the Director from the sale of the property in question here. Nevertheless, it is believed that no review can be had in a suit filed naming the United States as defendant.

It seems to me that there are good reasons why a suit of the kind brought here should be against the Director of Internal Revenue. Historically, Collectors of Internal Revenue have been held responsible when they exceeded their powers. Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99. This liability is touched upon by Mr. Justice Cardozo in Moore Ice Cream Co. v. Rose, supra, in his discussion of the act of Congress removing the requirement of protest at the time a tax was paid as a prerequisite to bringing suit. Under the law, a Director is required to pay over to the Government money he receives, even though he is aware that suit for collection or return of the money is about to be instituted. In the event that the Director has exceeded his powers and the court grants a certificate that there was probable cause for the act done by the Collector, or that he acted under the directions of the Secretary of the Treasury or other proper Government official, no execution is to issue upon the judgment, but the amount of the recovery is to be paid out of the Treasury. This has long been the law, and was re-enacted in 1948, 28 U.S.C.A. § 2006.

It is noted that Justice Cardozo said, 289 U.S. at page 382, 53 S.Ct. at page 623, of the Moore Ice Cream Co. v. Rose case:

"A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. [Citing cases.] There may have been utility in such procedural devices in days when the government was not suable as freely as now. [Citing cases and statutes.] They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court."

Nevertheless, there still may be good reason why a suit such as the present one should be against the Director. For instance, in Smietanka v. Indiana Steel Co., supra, the Supreme Court held that an action such as in the instant case is still a personal one against the official; and that when the suit is begun it cannot be known with certainty that the judgment will be paid out of the Treasury. That depends upon the certificate of the court in the case. There may be cases in which a court would refuse to give the certificate. For instance, in a situation in which a Director flagrantly or grossly exceeds his powers and can offer no justification therefor. He then becomes liable and he is not to be reimbursed by the Government.

The conclusion must be that the district courts have jurisdiction to entertain civil actions against Directors of Internal Revenue but there is no authority under the law to sue the United States. The complaint will be dismissed.