IN RE JUDICIAL CAMPAIGN COMPLAINT AGAINST STORMER.

[Cite as *In re Judicial Campaign Complaint Against Stormer,*

137 Ohio St.3d 449, 2013-Ohio-4584.]

*Judges—Judicial campaigns—Fundraising—Jud.Cond.R. 4.4(E)—Participating in or receiving funds from fundraising event that categorizes or identifies donors by amount of contributions—Candidate's participation must be knowing—Respondent was not aware of tiered nature of event or identities of donors—No violation found.*

(No. 2012-1874—Submitted April 10, 2013—Decided October 22, 2013.)

APPEAL from the Order of the Judicial Commission of the Supreme Court.

————————————

**Per Curiam**.

{¶ 1} Respondent, Elinore Marsh Stormer of Akron, Ohio, Attorney Registration No. 0014168, was admitted to the practice of law in Ohio in 1982. She was a candidate for Summit County probate judge in 2012. In October 2012, her opponent, Summit County Court of Common Pleas Judge Alison McCarty, filed a grievance with the Board of Commissioners on Grievances and Discipline alleging that Stormer had committed multiple violations of the Code of Judicial Conduct. A probable-cause panel of the board reviewed the grievance pursuant to Gov.Jud.R. II(5)(B). The secretary of the board then filed a formal complaint alleging that during the judicial campaign, Stormer participated in judicial-fundraising events sponsored by the Summit County Democratic Party on July 31 and September 25, 2012, that contributors at those events were categorized by amount contributed, and that Stormer's campaign committee received funds from those events in violation of former Jud.Cond.R. 4.4(E), 120 Ohio St.3d XCVIII, 86, adopted Mar. 1, 2009 (prohibiting a judicial candidate from participating in or

receiving campaign contributions from a judicial-fundraising event that categorizes or identifies participants by the amount of the contribution made to the event).[1]

{¶ 2} A panel of the board conducted a hearing and found by clear and convincing evidence that Stormer had violated former Jud.Cond.R. 4.4(E) by attending, participating in, and receiving money from just one of the two challenged fund-raising events. The panel, however, recommended that no disciplinary sanction or fine be imposed, but that Stormer be ordered to pay the costs of the proceedings and reimburse $2,000 of the complainant's attorney fees.

{¶ 3} A commission of five judges appointed by this court pursuant to Gov.Jud.R. II(5)(D)(1) and R.C. 2701.11 unanimously held, over the objections of Stormer and McCarty, that the record supported the hearing panel's finding that Stormer violated former Jud.Cond.R. 4.4(E) and that the panel did not abuse its discretion in making its recommendation. *In re Judicial Campaign Complaint Against Stormer*, 134 Ohio St.3d 1404, 2013-Ohio-34, 980 N.E.2d 1045.

{¶ 4} Expressing the view that the sanction should be commensurate with the seriousness of the violation and should deter similar misconduct in the future, however, the commission ordered Stormer to pay a $1,000 fine. The commission also ordered her to pay the costs of the proceeding and $6,000 of McCarty's attorney fees.

{¶ 5} Stormer appeals and challenges the commission's findings of misconduct, the application of former Jud.Cond.R. 4.4(E) to the facts of this case, and the order to pay a fine, costs, and attorney fees. For the reasons that follow, we find that no violation of former Jud.Cond.R. 4.4(E) has occurred, and we reverse the commission's January 10, 2013 order.

---

1. On December 7, 2012, this court adopted amendments to Jud.Cond.R. 4.4 that abrogated the version of Jud.Cond.R. 4.4(E) under which Stormer is charged. Jud.Cond.R. 4.4, 133 Ohio St.3d LXXXIII, LXXXVII, effective Jan. 1, 2013.

**Participation in and Receipt of Campaign Contributions from a Judicial-Fundraising Event that Categorized or Identified Participants by the Amount of Their Contribution**

**{¶ 6}** The commission determined that the record supports the hearing panel's finding that Stormer violated former Jud.Cond.R. 4.4(E) by participating in and receiving contributions from a September 25, 2012 judicial-fundraising event conducted by the Summit County Democratic Party that categorized or identified participants by the amount of their contribution to the event.

**{¶ 7}** On September 25, 2012, the Summit County Democratic Party held a fundraiser billed as a "Judicial Salute," featuring Stormer and six other candidates for judicial office. The party established four levels of sponsorship for the event:

| | |
|---|---|
| Table of Ten Sponsor: | $1,500 |
| Gold Sponsor: | $500 |
| Silver Sponsor: | $250 |
| Individual Sponsor: | $150 |

**{¶ 8}** The party requested that checks for this event be made payable to the Summit County Democratic Party, rather than the party's judicial fund. The panel found that the only recognition awarded to sponsors who gave at the designated levels was a flyer naming them, with the heading "Thank You to Our Sponsors." The party's executive director, Megan Moreland, testified that she placed a single copy of the flyer on approximately 20 tables at the event. Stormer testified that she arrived late for the event, that she did not see the flyer identifying the sponsors, and that her participation consisted of standing in a receiving line.

**{¶ 9}** Although the event was billed as a general fundraiser for the party, the panel found that the entire $37,800 raised at the event was deposited into the party's judicial fund. The panel also found that on October 7, 2012, the party gave Stormer's campaign $23,000 from that fund. The panel believed that former Jud.Cond.R. 4.4(E) was intended to prevent the perception that donors who received special recognition for giving larger sums of money at a single campaign event might get special treatment from the candidate once elected. Because donors at the September 25, 2012 event were recognized based on the amount of their donation, the panel concluded that Stormer's participation in and her receipt of money from that event violated former Jud.Cond.R. 4.4(E).

**{¶ 10}** The panel expressly rejected Stormer's constitutional challenges to the rule, as well as her argument that only knowing violations of the rule could be sanctioned. The panel also overruled her assertion that McCarty's claim was barred by the doctrine of laches. It did, however, find her violation of the rule to be "more technical than substantive" and observed that the participation of six other judicial candidates indicated that Stormer was not alone in her misunderstanding of the rule.

**{¶ 11}** The commission of judges conducted a conference by telephone on December 19, 2012. After considering the record, the objections, and the answer brief submitted by Stormer and McCarty, the commission unanimously held that the record supported the panel's finding that Stormer violated former Jud.Cond.R. 4.4(E) with regard to the September 2012 fundraising event.

**{¶ 12}** Focusing on the plain language of former Jud.Cond.R. 4.4(E), the commission found that the evidence supported the panel's conclusion that the September 25, 2012 event clearly identified donors and their corresponding sponsorship levels and that the public recognition of those donors at the event was an expression of gratitude—the very thing that the commission concluded the rule sought to prevent. Like the panel, the commission rejected Stormer's argument

that the rule should not apply to her unknowing conduct and found that "[t]he rule carries no scienter requirement and consequently serves to prohibit the activity regardless of the knowledge or even the level of involvement by the candidate or her campaign committee."

### Stormer's Challenges to the Enforcement of Former Jud.Cond.R. 4.4(E)

{¶ 13} Stormer argues that former Jud.Cond.R. 4.4(E) is both unconstitutionally vague and overbroad and that its imposition of strict liability for the acts of others of which she has no knowledge and over which she has no control unduly impinges on her freedom of speech and association. In support of these arguments, she notes that there is no record of any prior grievance or case alleging a violation of the rule since the rule was first adopted in 1995[2] and suggests that the rule is either commonly misunderstood or inequitably enforced because all of the Democratic judges and judicial candidates in Summit County attended the challenged event, yet she is the only judge charged with violating the rule. Moreover, she argues that this court's repeal of Jud.Cond.R. 4.4(E) during the pendency of this action suggests that the rule is constitutionally infirm or has failed to serve its intended purpose such that it is inequitable and unjust to enforce the now defunct rule against her.

{¶ 14} Former Jud.Cond.R. 4.4(E) prohibited a judicial candidate from participating in or receiving campaign contributions "from a judicial fundraising event that categorizes or identifies participants by the amount of the contribution made to the event," but it did not define the term "judicial-fundraising event." Given the context of the rule, however, as part of the canon that deals with

---

2. *See* former Jud.Cond.R. 7(C)(3), 72 Ohio St.3d XCI, XCVI, effective July 1, 1995 ("A judicial candidate shall not participate in or receive campaign contributions from a judicial fund raising event that categorizes or identifies participants by the amount of the contribution made to the event"). A Report of the Citizens' Committee on Judicial Elections recommended that the rule provide, "Judicial candidate[s] shall not participate in or receive campaign contributions from a fund raising event that categorizes or identifies participants by the amount of the contribution made to the event." 72 Ohio St.3d 1430, 1492. The court, however, amended the proposed rule by inserting the word "judicial" before the phrase "fund raising event." 72 Ohio St.3d 1450.

judicial-campaign activity, and more specifically, as part of the very rule that governs campaign solicitations and contributions, it is evident that the rule sought to prohibit judicial candidates from participating in or receiving campaign contributions from judicial fundraisers when the participants are categorized or identified by the amount of their contributions. The plain language of the rule indicated an intent that it apply to all events that raise funds for judicial campaigns—not just those events planned or hosted by the candidate's own campaign committee.

{¶ 15} In this case, however, the invitations to the party's September 25, 2012 event specified that checks were to be made payable to the Summit County Democratic Party—not the party's judicial fund. Moreland testified that having the checks issued in this manner afforded the party more flexibility to allocate the funds according to its needs. Thus, by all outward appearances, the September 25, 2012 event was a Democratic Party fundraiser, except that the party elected to allocate 100 percent of the proceeds to its judicial fund without any notice to Stormer.

{¶ 16} Former Jud.Cond.R. 4.4(E) did not specify that any mens rea was required to violate the rule. Therefore, the commission found that a judicial candidate is strictly liable for a violation of the rule regardless of the candidate's knowledge or level of involvement in the event and that Stormer's professed lack of knowledge was immaterial.

{¶ 17} The commission also implicitly overruled Stormer's vagueness and overbreadth challenges to the rule. To the extent that former Jud.Cond.R. 4.4(E) regulated a judicial candidate's participation in fundraising events, however, it necessarily implicates the freedoms of speech and association that are protected by the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("Effective

advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly").

{¶ 18} In *Grayned v. Rockford*, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court of the United States stated, "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Specifically, an enactment is void for vagueness if it (1) fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly, (2) invites arbitrary and discriminatory enforcement by failing to provide explicit standards for those who apply it, and (3) operates to inhibit the exercise of fundamental First Amendment freedoms. *Id.* Closely related to the third consideration of the vagueness analysis is the doctrine of overbreadth, which recognizes that "the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Members of Los Angeles City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), citing *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). However, invalidation for overbreadth is strong medicine that is not to be applied casually. *United States v. Williams,* 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

{¶ 19} Here, the failure of former Jud.Cond.R. 4.4(E) to specify a mens rea left judicial candidates like Stormer vulnerable to liability for participating in or receiving funding from events that were billed as general party fundraisers but, unbeknownst to the candidate, were actually "tiered" giving events. In the absence of a specific mens rea requirement, a candidate could be assured that his or her conduct would conform to the rule only by (1) avoiding participation in any

tiered-giving events if the funds raised could be used for judicial campaigns and (2) avoiding the acceptance of funds from any organization that categorizes or identifies participants by the amount of their contributions. And to the extent that this interpretation of the rule would limit the participation of judicial candidates at party-sponsored fundraising events where there is a tiered-giving structure, it would adversely affect the candidates' exercise of fundamental First Amendment freedoms.

{¶ 20} It has long been recognized that a statute or other rule of law " 'must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.' " *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379, 53 S.Ct. 620, 77 L.Ed. 1265 (1933), quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed 1061 (1916). Because we find absolute liability for the actions of third persons over which a judicial candidate has no control (and which may occur well after the candidate has acted) to be inconsistent with these precepts, we narrowly construe former Jud.Cond.R. 4.4(E) as requiring a *knowing* violation of the rule by participating in or receiving campaign contributions from a judicial-fundraising event that categorizes or identifies participants by the amount of the contribution made at the event.

{¶ 21} In this case, Stormer testified that she attended the September 25, 2012 event hosted by the party but that she believed that it was a fundraiser for the party, not the party's judicial fund. She was unaware that the event had been billed as a "Judicial Salute," did not recall having seen the party flyers suggesting tiered levels of giving, and did not see the "Thank You to Our Sponsors" handout with the sponsors' names. She testified that she did not learn the identities of the party's donors or the amounts of their donations—which were fully and publicly disclosed in the party's October 24, 2012 Ohio Campaign Finance Report—until the panel hearing on this matter on October 30.

{¶ 22} Although Stormer's own campaign-finance report reflects receipt of donations from the party's executive committee, the record reflects that she had no knowledge of how the party had allocated the funds from the September 2012 tiered-giving event. Therefore, we conclude that Stormer did not knowingly violate former Jud.Cond.R. 4.4(E).

{¶ 23} Even if we were to find that Stormer's conduct constituted a technical violation of the rule, however, we would not be required to impose discipline. Paragraph 6 of the Scope of the Ohio Code of Judicial Conduct provides:

> Although the black letter of the rules is binding and enforceable, it is not contemplated that every transgression will result in the imposition of discipline. Whether discipline should be imposed should be determined through a reasonable and reasoned application of the rules and should depend upon factors such as the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations and, the effect of the improper activity upon the judicial system or others.

{¶ 24} In addition to the constitutional concerns addressed above, it appears that Stormer is the only judicial candidate to be formally charged with a violation of former Jud.Cond.R. 4.4(E) in the 17 years that it was in effect. The commission's finding that she violated the rule did not come until January 10, 2013—ten days after the rule was abrogated. In light of these unusual circumstances, the absence of any need to deter future conduct of this nature, whether committed by Stormer or any other judicial candidate, and Stormer's

exemplary record during her more than 30 years of legal practice, more than 20 of which have been spent on the bench, we conclude that no sanction is warranted.

### Conclusion

**{¶ 25}** Accordingly, we reverse the order of the commission and order the Office of Attorney Services to remove the January 10, 2013 Judicial Campaign Conduct Violation from Stormer's record.

Order reversed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Alison McCarty, pro se.

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for respondent.

_____