# UNITED STATES v. PIEDMONT MFG. CO.
## No. 4125.

Circuit Court of Appeals, Fourth Circuit.
April 6, 1937.

E. E. Angevine, Atty., Tax Division, Department of Justice, of Washington, D. C. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Charles C. Wyche, U. S. Atty., and E. P. Riley, Asst. U. S. Atty., both of Greenville, S. C., on the brief), for appellant.

James A. Lowrey, Jr., and Wallace Miller, both of Macon, Ga., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The declaration in this suit by the Piedmont Manufacturing Company for the recovery from the United States of overpaid taxes was in two counts. In the first count the taxpayer claimed $5,484 for the year 1917, $43,977.86 for the year 1918, and $24,015.17 for the year 1920, or $73,447.03 in all on account of errors alleged to have been made by the Commissioner of Internal Revenue in the adjustment of the taxpayer's income and invested capital for the years mentioned. Claims for the refund of these amounts had been filed in due time by the taxpayer. In the second count the taxpayer made claim for $5,824.03 for the year 1917, $43,330.98 for the year 1918, and $10,796.75 for the year 1920, or $59,951.76 in all, based upon section 284 (c) of the Revenue Act of 1926, 44 Stat. 9, 66, which provides that under certain circumstances hereinafter discussed overpaid taxes may be recovered without filing a claim therefor, notwithstanding the period of limitation for filing claims has expired.

The District Court adjudged that the taxpayer should recover $63,544.57 principal and $44,627.96 interest to date of judgment under the first count, and $56,621.71 principal and $44,610 interest under the second count; but that, as both counts sought recovery for the same overassessments on different theories, the taxpayer should collect only the larger sum. Under a stipulation of counsel the case had been referred to the Bureau of Internal Revenue for investigation on its merits, and the Bureau had found that the taxpayer had made overpayments under the theory of the first count of $4,463.82 for the year 1917, $41,361.74 for the year 1918, and $17,719.01 for the year 1920, or $63,544.57 in all, and overpayments in the same amounts for 1917 and 1918, respectively, and in the amount of $10,796.15 for the year 1920, or $56,621.71 in all under the theory of the second count. It thus appears that the court based its judgment upon the findings of the Bureau. But the United States, nevertheless, contends that the judgment should be reversed because the court was without jurisdiction to entertain the suit.

Section 24 (20) of the Judicial Code, 28 U.S.C.A. § 41 (20), entitled "Suits against United States," gives the District Courts of the United States original jurisdiction concurrent with the Court of Claims of all claims not exceeding $10,000 founded upon the Constitution of the United States or any act of Congress, and of any suit commenced after the Revenue Act of 1921 (42 Stat. 227) for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, even if the claim exceeds $10,000 if the Collector by whom such tax was collected is dead or is not in office at the time of the commencement of the suit. The Collectors of Internal Revenue to whom the overpayment was made in this case were either dead or out of office when the suit

was brought; but substantial parts of the sum sued for as overpayments were paid by credits from over-assessments for the years 1919 and 1921. The Commissioner of Internal Revenue had allowed credits of $78,758.43 for 1919 and $10,656.34 for 1921, or $89,414.77 in all; and of this total $13,734.79 was added to the cash sum of $52,417.45 to pay an additional assessment of $66,152.24 for 1918, and the balance of the credit was used in paying an additional assessment of $75,679.98 for the year 1920. The United States admits that generally a payment by credit is a payment for the purposes of suit; but contends that this is not true of a suit against a Collector to recover an overpayment of taxes although he was in office when the credit was given. It is said that a payment of taxes by credit is not a payment to the Collector at all but merely a bookkeeping entry, so far as he is concerned, which he makes in a ministerial capacity at the behest of his superior officer, and hence it cannot be recovered in a personal suit against the Collector; and, further, that under the provision of section 24 (20) of the Judicial Code, 28 U.S.C.A. § 41 (20), permitting suit in the District Court against the United States for any amount when the Collector is dead or out of office, the United States is merely substituted for the Collector and no suit will lie against the United States that would not also lie against the Collector. In other words, the contention is that an option is given by the statute to a taxpayer who has made an overpayment of taxes to a Collector no longer in office either to sue the Collector or to sue the United States, and if he chooses the latter, he must make out a case of wrongful collection by the former. Hence it is concluded that all payments by credit must be ignored in the present action and recovery must be limited to the sums overpaid in cash. For authorities in support of this line of reasoning Routzahn v. Reeves Bros. Co. (C.C.A.) 59 F.(2d) 915, Untermyer v. Bowers (D.C.) 7 F.Supp. 347, and Moses v. United States (C.C.A.) 61 F.(2d) 791, are cited.

We are concerned here only with the overpayment for the year 1920, because the amounts erroneously collected for the years 1917 and 1918, that is, $4,463.82 and $41,361.74, respectively, were paid in cash. There was no application of any credit for the year 1917, and while a credit of $13,734.79 was used for the year 1918 in order to make up the sum overpaid for that year, the additional sum of $52,417.45 for that year was paid to the collector in cash. This cash sum exceeds the amount allowed in the judgment of the court for the year 1918, and hence the taxpayer has no need to rely on the amount paid by credit for that year. However, the whole amount allowed in the judgment for the year 1920, $17,719.01, was paid by credit, and hence the point made by the United States must be considered on its merits.

We are of the opinion that the entire amount of the overpayment, together with the overpayment by credit for the year 1920, was properly included in the judgment of the District Court. It is true that, technically considered, a suit against a Collector of Internal Revenue for overpaid taxes is a personal action and is distinguishable from a suit against the United States. Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; Union Trust Co. v. Wardell, 258 U.S. 537, 42 S.Ct. 393, 66 L.Ed. 753. But in reality a Collector is suable in such an action, not because he is a trespasser or a wrongdoer, but because he represents the United States, at whose behest the collection has been made, to which the money has been turned over, and by which any judgment against the Collector will be satisfied unless, in the opinion of the District Court, the Collector acted without probable cause. An overpayment in cash cannot be realistically distinguished from an overpayment by credit in determining the liability of a Collector. No such distinction was made in Graham v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415, in which a group of cases brought in the Court of Claims against the United States, or in the District Court against the Collector, to recover overpayments of taxes, was considered and it was said (282 U.S. 409, at page 424, 51 S.Ct. 186, 192, 75 L.Ed. 415) that: "the application of a credit against an assessment at a time when collection was barred must be regarded as an erroneous collection." The reason is apparent. All taxes assessed by the Commissioner are collected and receipted for by the Collector. 26 U.S.C.A. §§ 1531, 1532, 1541 (a), 1754–1755,

and 1549. All moneys received therefor are paid by him into the Treasury of the United States, 26 U.S.C.A. § 1761; and all judgments against him for erroneous collections are paid by the United States upon the court's certificate of probable cause, 28 U.S.C.A. § 842. Payments of taxes may be made in cash or by credit allowed by the Commissioner of Internal Revenue. A payment by credit, like a payment in cash, is recorded by the Collector on his accounts, and for all purposes of the United States and the taxpayer, is received as equivalent thereto. The Collector's participation in the transaction as the representative of the United States is as real and as essential in one case as in the other, and his responsibility to the taxpayer should be the same. This view, we think, is in harmony with the spirit of the decision in Moore Ice Cream Co. v. Rose, 289 U.S. 373, 382, 53 S.Ct. 620, 623, 77 L.Ed. 1265, where it was said: "A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. The Collector, supra, 5 Wall. [720] at page 731, 18 L.Ed. 614. There may have been utility in such procedural devices in days when the government was not suable as freely as now. United States v. Emery, Bird, Thayer Realty Co., supra [237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825]; Ex parte Bakelite Corporation, 279 U.S. 438, 452, 49 S.Ct. 411, 73 L.Ed. 789; Act of February 24, 1855, c. 122, 10 Stat. 612, §§ 1 and 9; Judicial Code, § 145, 28 U.S.C. § 250 (28 U.S.C.A. § 250); Judicial Code, § 24 (20), 28 U.S.C., § 41 (20), 28 U.S.C.A. § 41 (20). They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court."

See, also, Landesman-Hirschheimer Co. v. Routzahn, C. C. H. Tax Service, Book 313, par. 9023; Prentice Hall Tax Service 1931, par. 499; appeal dismissed on motion of appellant (C.C.A.) 51 F. (2d) 1083; Boston Pressed Metal Co. v. United States (Ct.Cl.) 42 F.(2d) 312, 313; Logan-Gregg Hardware Co. v. Heiner (D.C.) 26 F.(2d) 131.

But even if a Collector is not chargeable for the erroneous application of a credit to the overpayment of taxes, there is no reason to recognize the distinction between cash and credit in a suit like the present against the United States under the permissive statute, 28 U.S.C.A. § 41 (20), which gives the District Court jurisdiction of any suit for the recovery of any internal revenue tax erroneously assessed or collected if the Collector by whom such tax was collected is dead or out of office when the suit is commenced. Manifestly, the main purpose of the act was to afford the taxpayer a convenient method of recovering his loss in his local District Court, and no sufficient reason appears for the attribution to Congress of the intent to restrict the remedy to payments in cash and to leave unaffected payments equally harmful and unjust which the taxpayer has made by credit. So far as the parties to the suit are concerned, an erroneous collection has been made and recorded in the Collector's books, and this reality should be recognized by a liberal construction of the statute so as to carry out the beneficent purpose of Congress. United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S.Ct. 499, 59 L.Ed. 825; Schwab v. United States (C.C.A.) 17 F.(2d) 34.

The second count of the declaration is based on section 284 (c) of the Revenue Act of 1926, 44 Stat. 9, 66, which provides that if the invested capital of the taxpayer is decreased by the Commissioner owing to the fact that the taxpayer failed to make adequate deductions in previous years, resulting in overpayment of income or profit taxes therein, the amount of overpayment shall be credited or refunded without filing claim therefor, although the period of limitation provided in subdivisions 284 (b) or (g) has expired.

The question involved under this count is not of much practical importance to the parties in this suit because the plaintiff's position is open to the same attack as under the first count, that is, that a substantial part of the overpayment was

made by credit; and, furthermore, the amount recoverable in any event for the year 1920, under the second count, is less than that recoverable under the first count; while for the years 1917 and 1918, the amount recoverable under both counts is the same.

The difference between the two counts seems to be that in count 1 the taxpayer claims in general terms that an overassessment and overpayment of taxes for the years named took place, while in count 2 the particular claim is made that such overassessment and overpayment was brought about by the failure of the taxpayer to make adequate deductions for these years as the result of which the Commissioner later reduced the taxpayer's invested capital. The act provides that in such event the amount of the overpayment shall be credited or refunded without the filing of a claim therefor, even though the period of limitations has expired.

The contention of the United States is that although the taxpayer need not file a claim for refund to be entitled to a credit or refund for an overpayment, under section 284 (c) he is none the less required by Rev.St. § 3226, as amended, 26 U.S.C.A. §§ 1672–1673, if he wishes to bring suit against the United States to recover the overpayment, first to file a claim for refund or credit with the Commissioner of Internal Revenue. Section 3226 explicitly provides that no suit shall be maintained for the recovery of any internal revenue tax erroneously assessed or collected unless such claim is filed; and the contention is that while a claim is not a necessary basis for a refund or credit through administrative channels, it is essential to the maintenance of a suit against the United States if the Commissioner refuses relief. There is authority to support this position. See Foster Box Board Co. v. Clarke (D.C.) 7 F.Supp. 682; Schrader's Son v. United States (C.C.A.) 51 F.(2d) 1038; Renfrew Mfg. Co. v. United States (D.C.) 53 F. (2d) 404.

We think, however, that the position of the Government is not tenable. Section 3228, as amended by section 1112 of the Revenue Act of 1926, 44 Stat. 9, 115 (26 U.S.C.A. § 1433 note), provides that claims for refund or credit, except as provided in section 284, shall be presented to the Commissioner of Internal Revenue within four years next after the payment of the tax. The general purpose of this enactment to give the appropriate administrative officials of the Government notice of the nature and amount of the claim and an opportunity to pay or adjust the claim before suit, is obvious, but manifestly no advance notice is necessary when the justice and amount of the claim has already been approved by the Commissioner, and the filing of the claim with him will add nothing to the information in his possession. Furthermore, it may well be that the four-year period for the filing of claims will have expired before the Commissioner's determination is made, so that the filing of the claim will then be barred. In such a contingency the construction of the statute for which the Government contends would defeat its very purpose. See Crossett Timber Co. v. United States (D.C.) 38 F.(2d) 814.

Affirmed.