**DRESSER INDUSTRIES, INC. and its Subsidiaries, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 3–98–CV–0369–BD.

United States District Court,
N.D. Texas,
Dallas Division.

June 25, 1999.

Andrew L. Sobotka, U.S. Dept. of Justice, Tax Div., Dallas, TX, for Defendant.

Robert H. Albaral, Baker & McKenzie, Dallas, TX, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

KAPLAN, District Judge.

This case is before the Court on cross-motions for partial summary judgment. For the reasons stated herein, both motions are granted in part and denied in part.

I.

This is a suit to recover federal income taxes and interest paid by Dresser Industries, Inc. and its subsidiaries for the 1981–1987 tax years.[1] On February 28, 1994, the United States Tax Court determined that Dresser underpaid its taxes for 1980–1982 and assessed a deficiency of $22,385,587. (Jt. Stipulation ¶ 4, Exh. 1). This sum was paid on September 22, 1993, along with an additional $23,242,401 in taxes and interest for 1982, 1984, 1986, and 1987.[2] (*Id.* ¶ 6). Dresser now seeks a refund in the amount of $2,585,776. (*Id.* ¶¶ 7–9, 11–12).

Numerous tax issues are implicated by this refund claim. Two are raised in the pending summary judgment motions. The first involves the calculation of combined taxable income for Dresser and its Domestic International Sales Corporation ("DISC") and Foreign Sales Corporation ("FSC").[3] A brief explanation of the DISC is necessary to put this issue in context. The DISC is a creature of federal tax law, created in 1971 as part of an overall strategy to boost domestic exports by providing tax incentives to companies involved in export trade. *See* REVENUE ACT OF 1971, Pub.L. No. 92–178, 85 Stat. 535 (1971), *codified as amended at* 26 U.S.C. §§ 991–997. Typically, it is a "shell corporation" with no facilities, employees, or inventory of its own. The DISC acts as a paper broker and skims profits of the parent company by taking "commissions" on ex-

1. Dresser keeps its books and files its federal income tax returns on an "accrual" basis. (Jt. Stipulation ¶ 2). This means that income is recognized when sales are made or services are rendered. Expenses are recognized as they are incurred. Dresser has chosen October 31 as the end of its fiscal year for accounting purposes. Therefore, the tax years at issue begin on November 1 and end on October 31.

2. Dresser also owed an additional $1,113,634 in taxes for 1981. This deficiency was satisfied either in whole or in part with a carryback from a subsequent year or an existing overpayment on its 1981 account. (Jt. Stipulation ¶ 6).

3. Dresser International Sales Corporation was a wholly-owned subsidiary of Dresser Industries, Inc. and qualified as a DISC for the 1982–1984 tax years. (Jt. Stipulation ¶ 21). In 1984, Congress replaced the DISC provisions of the tax code with the FSC. *See generally,* Note, *The Making of a Subsidy, 1984: The Tax and International Trade Implication of the Foreign Sales Corporation Legislation,* 38 Stan.L.Rev. 1327, 1334–55 (1986). Dresser Foreign Sales Corporation was incorporated on December 12, 1984 and has qualified as a FSC since that time. (Jt. Stipulation ¶ 23).

port sales. A qualified DISC subsidiary is not taxed on income derived from the sale of exports. Rather, its shareholders are taxed on a specified percentage of DISC taxable income as if a dividend distribution had been made at the end of the tax year. DISC taxable income, from which this dividend distribution is calculated, is based on a complex statutory framework that establishes a "deemed" transfer price for export goods provided to the DISC by the parent supplier. *Id.* Dresser calculates the deemed transfer price as 50% of the "combined taxable income" of the DISC and its parent for the 1983–1986 tax years. 26 U.S.C. § 994(a)(2). Combined taxable income is computed by deducting expenses related to the production and sale of export property from gross receipts of the DISC. *See* H.R.Rep. No. 533, 92nd Cong., 1st Sess., *reprinted in* 1971 U.S.C.C.A.N. 1825, 1887–88. One such expense is interest. Dresser contends that it is entitled to first allocate interest expense to interest income before allocating a portion of the remaining interest expense to income generated by the sales of export property through the DISC. Netting the interest in this manner reduces combined taxable income and Dresser's overall tax liability. The government rejects this approach and maintains that only a ratable share of "gross interest" can be apportioned to the DISC.

The second issue is whether Dresser can use foreign tax credit carrybacks to offset deficiency interest owed for 1981 and 1984. Ordinarily, a taxpayer who underpays its taxes is liable for interest on all unpaid amounts from the time the tax is due until the date it is paid in full. *See* 26 U.S.C. § 6601(a) & (b). Dresser paid deficiency interest in the amount of $1,552,575 as a result of a $265,109 tax liability for 1981 and a $6,261,397 tax liability for 1984. (Jt. Stipulation ¶¶ 8, 12, 26–27). However, it accumulated excess foreign tax credits of $265,109 in 1983 and $6,261,397 in 1986. (*Id.* ¶¶ 26–27). These credits were carried back to the earlier tax years and became taxes "deemed paid" in those years. 26 U.S.C. § 904(c). Dresser now claims that

it is entitled to a refund of deficiency interest because the foreign tax credit carrybacks eliminated the initial deficiencies.

Both parties move for partial summary judgment on procedural and substantive grounds. The government contends that: (1) some of the refund claims for 1981 and 1982 are untimely under the applicable statutes of limitation; (2) a portion of the 1985 claim is precluded by the doctrine of variance; and (3) the Court lacks subject matter jurisdiction over the claims for 1986 and 1987. Dresser maintains that its refund claims are not barred by limitations or any other procedural defense. It also seeks judgment as matter of law on two substantive issues. Dresser argues that: (1) it is entitled to apportion net interest expense as a component of the combined taxable income of its DISC and FSC subsidiaries; and (2) it is entitled to a refund of interest paid on deficiencies that were subsequently eliminated by foreign tax credit carrybacks. The parties have briefed these issues and presented oral argument at a hearing on May 21, 1999. This matter is now ripe for determination.

## II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir.), *cert. denied*, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matter of Gleasman*, 933 F.2d 1277, 1281 (5th Cir.1991).

This case is before the Court on cross-motions for summary judgment.[4] Consequently, each party has the burden of producing evidence to support its motion. *Dutmer v. City of San Antonio,* 937 F.Supp. 587, 589–90 (W.D.Tex.1996). A movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park, Texas,* 950 F.2d 272, 276 (5th Cir.1992). Either party may satisfy its evidentiary burden by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All the evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993).

### III.

The parties first dispute whether the refund claims are procedurally barred. The government argues that: (1) some of the claims for 1981 and 1982 are untimely under the applicable statutes of limitations; (2) a portion of the 1985 claim is precluded by the doctrine of variance; and (3) the Court lacks subject matter jurisdiction over the claims for 1986 and 1987. Each of these procedural issues will be examined in turn.

### A.

The statutes of limitations applicable to tax refund claims are set forth in 26 U.S.C.

§ 6511. As a general rule, such a claim must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). The tax code also contains special limitations rules applicable to particular types of credits and refunds. *Id.* § 6511(d). Two are at issue here. The first rule applies when the refund claim is based on the allowance of a foreign tax credit:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country ... in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

*Id.* § 6511(d)(3)(A). The second rule applies to net operating loss carrybacks:

> If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback ... in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss ... which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later ...

*Id.* § 6511(d)(2)(A).[5] In cases where the allowance of a net operating loss carryback "is otherwise prevented by the operation of any law or rule of law," a refund claim is timely if "filed within the period provided

---

**4.** A case may not be appropriate for summary disposition even if the parties have filed cross-motions for summary judgment. *Bricklayers, Masons and Plasterers International Union of America, Local Union No. 15, Orlando, Florida v. Stuart Plastering Co.,* 512 F.2d 1017, 1023 (5th Cir.1975); *Dutmer v. City of San Antonio, Texas,* 937 F.Supp. 587, 589 (W.D.Tex.1996). The Court must still examine the record to determine whether there are genuine issues of material fact for trial. *John*

*v. State of Louisiana Board of Trustees for State Colleges and Universities,* 757 F.2d 698, 705 (5th Cir.1985); *Schlytter v. Baker,* 580 F.2d 848, 849 (5th Cir.1978).

**5.** The "period prescribed in subsection (c)" is six months after the expiration of an agreement under section 6501(c)(4) to extend the time to make assessments. *See* 26 U.S.C. § 6511(c)(1).

in subparagraph (A) of this paragraph." *Id.* § 6511(d)(2)(B).

Dresser paid its taxes for 1981 and 1982 on September 22, 1993. It filed formal claims for refund on June 27, 1995. Dresser maintains that these refund claims were timely because the special rules applicable to foreign tax credits and net operating loss carrybacks supplant only the three-year limitations period of section 6511(a), not the alternative period of "2 years from the time the tax was paid." Because each tax year implicates a different statute of limitations, the Court will address them separately.

### 1.

Dresser claims that it is entitled to a deduction for DISC commission expense and an increase in DISC deemed dividends based on a recalculation of its combined taxable income for the 1983 tax year. These adjustments create a foreign tax credit carryback to 1981. As a result, Dresser seeks a refund of $257,236 in deficiency interest for the 1981 tax year.

As previously noted, the statute of limitations for a refund claim based on the application of a foreign tax credit is "10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made." *Id.* § 6511(d)(3)(A). The government concedes that this special rule does not affect the two-year limitations period set forth in section 6511(a). Nevertheless, it argues that Dresser's claim is still barred because: (1) the application of a foreign tax credit does not constitute a "payment" of taxes; and (2) this Court lacks jurisdiction over a refund claim involving a tax year that has been the subject of a Tax Court decision.

### a.

The government contends that the application of a foreign tax credit does not constitute a "payment" within the meaning of section 6511(a) because "there is a distinct difference between making a payment of tax liabilities and having those tax liabilities eliminated through the use of [a] ... tax credit ..." (Govt. Motion at 11).

This bold assertion is neither self-evident or supported by the clear weight of legal authority. "[A] tax is deemed to be paid ... if an overpayment of one year is credited against a deficiency of another year." *Kingston Products, Corp. v. United States,* 177 Ct.Cl. 471, 368 F.2d 281, 287 (1966). Thus, the application of a credit is treated in the same manner and has the same effect as a cash payment. *Republic Petroleum Corp. v. United States,* 613 F.2d 518, 525 & n. 19 (5th Cir.1980).

The Court concludes that the application of a foreign tax credit constitutes a "payment" of taxes. Dresser may rely on the two-year limitations period contained in section 6511(a).

### b.

The government also argues that this Court lacks jurisdiction over the 1981 refund claim because it involves a tax year previously adjudicated by the Tax Court. Section 6512(a) of the tax code provides, in relevant part:

> [I]f the taxpayer files a petition with the Tax Court ... no credit or refund of income tax for the same taxable year ... in respect of which the Secretary has determined the deficiency shall be allowed or made and *no suit by the taxpayer for recovery of any part of the tax shall be instituted in any court ...*

26 U.S.C. § 6512(a) (emphasis added). This bar is jurisdictional and has been broadly interpreted to prohibit *any* action for taxes for that taxable year. *Solitron Devices, Inc. v. United States,* 862 F.2d 846, 848 (11th Cir.1989). *See also Pena v. United States,* 883 F.Supp. 154, 156 (S.D.Tex.1994), *aff'd,* 66 F.3d 320 (5th Cir. 1995) ("Such an action is precluded even when the issue that the taxpayer desires to raise could not have been litigated in Tax Court because it depends on facts that occurred subsequent to the Tax Court's decision."); *Prizer v. United States,* 11 Cl.Ct. 184, 187 (1986) ("[T]he Tax Court's jurisdiction, once it attaches, extends to

the entire subject of the correct tax for the particular year.").

Dresser filed a petition in the United States Tax Court challenging deficiencies assessed for the 1980–1982 tax years. The Tax Court determined that Dresser underpaid its taxes for those years and ordered it to pay the deficiencies. (Jt. Stipulation ¶ 4). It therefore appears that Dresser is precluded from seeking a refund for the 1981 tax year under section 6512(a). Dresser acknowledges this jurisdictional bar, but argues that it should apply to the year in which the foreign tax credit arises. Here, the credit arose in 1983 and was carried back to 1981. Since 1983 was not a prior Tax Court year, Dresser maintains that its refund claim is not barred.

The only authority cited for this proposition is *Blackmon & Associates, Inc. v. United States,* 1978 WL 1222 (N.D.Tex. May 17, 1978) (No. CA 4–75–213). The district court in *Blackmon* held that the taxpayer was not required to litigate his claim to a foreign tax credit in a prior lawsuit involving the tax year to which the credit was carried back. The court noted that "[a] foreign tax credit carryback is applied to the year to which it is carried back and is not out of such year." Therefore, the doctrine of *res judicata* did not apply. *Id.* at *5.

Dresser's reliance on *Blackmon* is misplaced. The jurisdictional bar created by section 6512(a) is not based on principles of *res judicata.* Rather, it operates as a statute of limitations. *See Elbert v. Johnson,* 164 F.2d 421, 424 (2d Cir.1947) ("It is not the decision which the Tax Court makes, but the fact that the taxpayer has resorted to that court which ends his opportunity to litigate in the District Court his tax liability for the year in question."). The operative year for limitations purposes is the one to which the credit is carried back, thereby reducing the taxpayer's liability and giving rise to the refund claim. Indeed, it seems illogical to suggest otherwise.

■ For these reasons, the Court concludes that Dresser is precluded from

seeking a refund for the 1981 tax year based on the application of a foreign tax credit. The government's motion for summary judgment is granted on this ground and Dresser's motion is denied.

2.

Dresser also seeks a $773,387 refund as a result of a net operating loss in 1985 that was carried back to 1982. The parties agree that this refund claim involves a year previously decided by the Tax Court. However, the limitations rule applicable to net operating losses includes a savings clause:

> "If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carryback ... is otherwise prevented by the operation of any law or rule of law ... such credit or refund may be allowed or made, if claim therefor is filed within the period provided in subparagraph (A) of this paragraph."

26 U.S.C. § 6511(d)(2)(B)(i). The "period provided in subparagraph (A)" refers to the period described in section 6511(d)(2)(A), the general limitations exception for net operating loss carrybacks. *Longiotti v. United States,* 635 F.Supp. 840, 842 (M.D.N.C.1986), *aff'd,* 819 F.2d 65 (4th Cir.), *cert. denied,* 484 U.S. 985, 108 S.Ct. 502, 98 L.Ed.2d 500 (1987). Thus, a refund claim based on a net operating loss carryback may be filed within three years from the due date of the return "in lieu of the 3–year period of limitation prescribed in [section 6511(a) ]." 26 U.S.C. § 6511(d)(2)(A).

The government contends that the 1982 refund claim is barred by limitations because it was not filed within three years "after the time prescribed by law for filing the return ... for the taxable year of the net operating loss." *Id.* Dresser counters that the savings clause of section 6511(d)(2)(B) also incorporates the two-year limitations period contained in section 6511(a). Alternatively, Dresser maintains

that it presented a viable informal claim within the three-year period.

### a.

The government concedes that the two-year limitations period of section 6511(a) is not abrogated by the general exception for net operating loss carrybacks contained in section 6511(d)(2)(A). However, it argues that this two-year period does not apply when the refund claim is "otherwise prevented by the operation of any law or rule of law" under section 6511(d)(2)(B).[6] Dresser counters that because the general exception admittedly incorporates the two-year payment rule, the reference to "the period prescribed in subparagraph (A)" also implicitly includes that alternative limitations period.

This very issue was addressed by the Ninth Circuit in *Mar Monte Corp. v. United States*, 503 F.2d 254 (9th Cir.1974). The taxpayer in *Mar Monte* filed a petition in Tax Court challenging a notice of deficiency for the 1959 tax year. A settlement was reached and the deficiency was paid in April 1966. The Tax Court approved this settlement on June 8, 1966. Thereafter, the taxpayer sought to deduct net operating losses incurred in 1960–1962 from ordinary income realized in 1959 as a result of the Tax Court decision. This carryback significantly reduced the underlying tax liability. A formal claim for refund was filed on November 23, 1966. The taxpayer argued that the claim was timely under the two-year payment rule. The Ninth Circuit disagreed. The court noted that "Mar Monte seeks a refund for a year which previously has been the subject of a final Tax Court judgment." *Id.* at 255. Therefore, the relevant statute is section 6511(d)(2)(B). The plain language of that statute provides for only one limitation period—the three-year rule referenced in section 6511(d)(2)(A). *Id.* at 257. As support for its position, the court cited to the legislative history of a predecessor statute. Congress specifically noted that:

[T]he period provided in [section 6511(d)(2)(A) ] is to be in lieu of the 3–year period provided in [section 6511(a) ] ... [Section 6511(d)(2)(A) ], however, is not to affect any other period, such as the 2–year period after the payment of the tax, within which under present law a claim for credit or refund may be filed.

*Id.* at 257–58, *citing* H.R.Rep. No. 849, 79th Cong., 1st Sess. 30, *reprinted in* 1945 Com.Bull. 566, 586. Significantly, the legislative history does not address the situation covered by section 6511(d)(2)(B). The court determined that "[t]he only reasonable inference is that the failure to state that the two-year period would remain applicable was intentional and that Congress thus intended that only the [three-year] period would apply." *Mar Monte*, 503 F.2d at 258. *See also Family Group, Inc. v. United States*, 416 F.Supp. 1170, 1172 (E.D.N.Y.1976).

Dresser attempts to distinguish *Mar Monte* by noting that the net operating loss arose prior to the Tax Court proceedings. *Mar Monte*, 503 F.2d at 258; *accord Family Group*, 416 F.Supp. at 1172. The *Mar Monte* court observed that:

The Congress, when it enacted subparagraph (B), was apparently concerned with affording relief to a taxpayer in a situation wherein, in a year subsequent to a Tax Court decision, and *unknown at the time of the Tax Court proceedings,* net operating loss has arisen which the taxpayer seeks to carry back to the year previously determined by the Tax Court.

*Mar Monte*, 503 F.2d at 258 (emphasis added). Here, the government still has not allowed the adjustments that give rise to the net operating loss carryback. Dresser therefore contends that *Mar Monte* is not applicable because its net operating losses were not available for carryback at any time during the pendency of the Tax Court case. (Plf.Br. at 16).

---

6. The jurisdictional bar created by section 6512(a) constitutes an impediment created

"by operation of any law or rule of law" within the meaning of section 6511(d)(2)(B).

The Court rejects this argument for two reasons. First, the language cited by Dresser is clearly dicta. Section 6511(d)(2)(B) makes no distinction between losses that were known to the taxpayer before the Tax Court decision and those that were not. Second, the relevant inquiry suggested by *Mar Monte* is whether the taxpayer *knew* about the net operating loss prior to the Tax Court decision, not whether the losses were available for carryback during the pendency of those proceedings. Clearly, Dresser knew about its net operating losses at or near the time it filed its 1985 tax return. *See Family Group, Inc.*, 416 F.Supp. at 1172. The Tax Court did not issue a final decision in this case until February 28, 1994. (Jt. Stipulation ¶ 4). This is not a situation where the net operating loss carryback arose in a year subsequent to a Tax Court decision.

■ The Court agrees with the other federal courts that have decided this issue and finds that Dresser's formal refund claim for 1982 is barred by limitations.[7]

b.

Alternatively, Dresser maintains that it presented a viable informal claim within the three-year limitations period of section 6511(d)(2)(A). On October 3, 1989, Dresser sent the following letter to the IRS:

The purpose of this memo is to raise an informal claim that Dresser Foreign Sales Corporation takes the position, as an affirmative issue, that it is entitled to net interest income against interest expense and to allocate and apportion the net amount in determining [combined taxable income] under Section 925(a) for tax year ended 10–31–85.

(Jt. Stipulation ¶ 18, Exh. 3). Dresser argues that this letter, filed within three years of the due date of the return, was sufficient as a matter of law to preserve its right to seek a refund.[8]

Federal courts have long recognized that an informal claim may preserve a taxpayer's right to assert a refund claim. *United States v. Kales*, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941); *Gustin v. United States*, 876 F.2d 485, 488 (5th Cir.1989). An informal claim is sufficient if it "puts the Commissioner of Internal Revenue on notice that the taxpayer believes an erroneous tax has been assessed and desires a refund for certain years." *Gustin*, 876 F.2d at 488. Although the claim must contain a written component, the writing need not provide the entire framework for the claim. *Id.* at 489. The Court must examine the surrounding circumstances to determine "whether under those facts the Commissioner knew, or should have known, that a claim was being made." *Id.* at 488–89.

■ The only evidence presented by Dresser is the written component of its informal claim. The letter states that Dresser Foreign Sales Corporation intends to "net interest income against interest expense and allocate and apportion the net amount" in calculating its combined taxable income for the 1985 tax year. However, there is no indication from this writing that Dresser intended to seek a credit or refund based upon those calculations. *See Rosengarten v. United States*, 149 Ct. Cl. 287, 181 F.Supp. 275, 279, *cert. denied*, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960) (informal claim that only "makes it possible for the Commissioner to discover the existence of a claim if he makes an independent investigation and sorts out the clues will not do."). The Court therefore concludes that the letter itself is insufficient to constitute an informal claim. *See*

---

7. The decision in *Nelson v. United States*, 757 F.2d 1537 (5th Cir.1985), does not compel a different result. The *Nelson* court recognized that the three-year limitations period set forth in section 6511(d)(2)(A) does not abrogate the two-year payment rule of section 6511(a). However, the refund claim in *Nelson* did not involve a year previously decided by the Tax Court. To that extent, *Nelson* is consistent with *Mar Monte*.

8. The parties agree that Dresser had until April 30, 1994 to file its income tax returns for the 1983–1987 tax years. (Jt. Stipulation ¶ 5).

*Estate of Hale v. United States,* 876 F.2d 1258, 1263 (6th Cir.1989) (taxpayer's election to apply gift taxes to offset estate taxes did not constitute an informal claim because it was not clear from the election alone that there had been any overpayment of taxes).

 On the other hand, the government does not argue that it was unaware that Dresser intended to seek a refund for the 1985 tax year based on the netting of interest. Rather, it maintains that the letter was insufficient because it was submitted on behalf of Dresser Foreign Sales Corporation and not the taxpayer named in the consolidated tax return. Of course, a refund claim must be submitted on behalf of the taxpayer who is entitled to the refund. *United States v. Commercial National Bank of Peoria,* 874 F.2d 1165, 1172 (7th Cir.1989); *Rosengarten,* 181 F.Supp. at 279. However, it is not necessary that the written component, as distinguished from the claim as a whole, be designated as correspondence from a particular entity. *Commercial National Bank of Peoria,* 874 F.2d at 1172. The letter at issue was printed on Dresser's stationery and submitted in connection an audit of Dresser's consolidated tax return for the 1985 tax year. The revenue agent's report refers to this letter as an "informal claim" and analyzes the substantive implications of interest netting on Dresser's tax liability. (Jt. Stipulation, Exh. 5 & 6). Dresser clearly had an interest in whether its FSC was allowed to calculate combined taxable income in the manner suggested by the letter. *See Commercial National Bank of Peoria,* 874 F.2d at 1172.

 The Court is unable to determine whether the informal claim submitted by Dresser was sufficient to put the IRS on notice of its intent to seek a refund for the 1985 tax year. This is a genuine issue of material fact that precludes summary judgment for either party.

c.

The informal claim submitted by Dresser refers only to the allocation and apportionment of net interest expense in calculating the combined taxable income of its FSC subsidiary for the 1985 tax year. However, Dresser also seeks a refund based on acquisition costs incurred in 1985. The government argues that this issue was not raised in the informal claim and is precluded by the doctrine of variance.

 A taxpayer may not file suit to recover a refund on a ground that is not specifically raised by a claim to the IRS or comprised within the general language of such a claim. 26 U.S.C. § 7422(a); *Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1137–38 (Fed.Cir.1983). Nor can a taxpayer amend a refund claim to set forth new grounds not asserted in the original claim after the statute of limitations has expired. *Favell v. United States,* 22 Cl.Ct. 571, 579 (1991). Such is the case here. To the extent that Dresser's informal claim for the 1985 tax year was timely and proper, it only put the government on notice of an issue regarding the netting of interest. Dresser never sought a refund based on acquisition costs until it filed its formal claim on June 27, 1995. (Jt. Stipulation ¶ 13). The formal claim is clearly time-barred and at variance with the informal claim. The government's motion for summary judgment is granted on this ground.

3.

The parties agree that Dresser's 1984 refund claim is governed by the two-year payment rule of section 6511(a). Dresser paid taxes and interest in the amount of $1,502,912 on September 23, 1993. (Jt. Stipulation ¶ 6). It filed a formal refund claim on June 27, 1995. (*Id.* ¶ 11). Therefore, the claim is timely to the extent of taxes paid in 1993. *See* 26 U.S.C. § 6511(b)(2)(B).[9] Dresser's motion for

9. Section 6511(b)(2)(B) provides:
 If the claim was not filed within such 3–year period [prescribed by section 6511(a) ], the amount of the credit or re-

fund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.
26 U.S.C. § 6511(b)(2)(B).

summary judgment is granted on this ground.

### B.

Dresser wants to carry forward a $59,-579 charitable contribution to 1987 as a result of interest netting in 1986. The government argues that such relief is barred by the Declaratory Judgment Act.

Dresser acknowledges that federal courts lack jurisdiction to issue declaratory judgments "with respect to federal taxes other than actions brought under § 7428 of the Internal Revenue Code of 1986 . . ." 28 U.S.C. § 2201.[10] However, Dresser maintains that it is not seeking declaratory relief. Rather, it suggests that jurisdiction is proper under 28 U.S.C. § 1346. This statute provides, in relevant part:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . .

28 U.S.C. § 1346(a)(1). Dresser correctly notes that this statute allows taxpayers to recoup taxes "erroneously or illegally assessed or collected" by the government, whether the tax was paid in cash or by the application of a credit from a prior year. *Schon v. United States,* 759 F.2d 614, 617 (7th Cir.1985), *citing United States v. Piedmont Manufacturing Co.,* 89 F.2d 296, 297–99 (4th Cir.1937). However, the taxpayer must prove that the credit resulted in the overpayment of taxes. *See id.*

Dresser has failed to meet its burden in this regard. There is no evidence that Dresser would be entitled to a refund

if the tax credits claimed for 1986 were carried forward to 1987. Indeed, Dresser does not seek a refund on that basis. Rather, it requests only that "additional tax credits generated from FSC netting interest in 1986 be properly carried forward to future years." (Plf. Motion at 21; Plf. Response at 11). The Court is without jurisdiction to make such a determination. Accordingly, the government's motion for summary judgment is granted on this ground and Dresser's motion is denied.

### IV.

The parties also raise two substantive issues in their summary judgment motions: (1) whether Dresser is entitled to apportion net interest expense as a component of the combined taxable income of its DISC and FSC subsidiaries; and (2) whether Dresser is entitled to a refund of interest paid on deficiencies that were subsequently eliminated by foreign tax credit carrybacks. The Court will addresses these issues separately.

### A.

Dresser contends that it is entitled to net gross interest income against gross interest expense in computing the combined taxable income of its DISC and FSC subsidiaries for the 1984 and 1985 tax years.[11] Indeed, this was the holding in *Dresser Industries, Inc. v. Commissioner of Internal Revenue,* 911 F.2d 1128 (5th Cir.1990). *Dresser* involved a dispute over the apportionment of interest expense between the parent corporation and its DISC. The government argued that *gross* interest expense, not *net* interest expense, must be allocated to gross export receipts for the purpose of determining combined taxable income under 26 U.S.C. § 994(a). The Fifth Circuit disagreed. The court noted that the applicable treasury regulation in effect at the time provided:

---

10. Section 7428 deals with the status and classification of non-profit organizations for tax purposes and is not relevant here.

11. Dresser also seeks a refund based on interest netting in 1983. However, the Court has previously determined that this claim is barred by 26 U.S.C. § 6512(a).

From the items of gross income ... there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any other expenses, losses, or deductions which cannot definitely be allocated to some item or class of gross income.

Treas.Reg. 1.861–8(a) (as amended in 1975). While this regulation sets out the *method* of allocating "expenses, losses, and other deductions," it does not define the *amount* of deductions to be allocated. Given this ambiguity, the court considered different interpretations of the regulation. It ultimately concluded that the "realities of business finance" were more consistent with an interpretation that apportioned interest expense among related business operations based on the actual cost of financing those operations. *Dresser*, 911 F.2d at 1135. The court wrote that "requiring allocation of gross interest expenses would burden the DISC with a disproportionate share of actual borrowing costs attributable to all operations, not merely export operations." *Id.* at 1136; *see also General Portland Cement Co. v. United States*, 628 F.2d 321, 343–44 (5th Cir.1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981). Therefore, Dresser was allowed to "offset its interest income against its interest expense and allocate the net interest expense to its DISC for purposes of calculating [combined taxable income]." *Dresser*, 911 F.2d at 1136.

Dresser argues that this decision controls the outcome of this case. This might be a compelling argument if the treasury regulations had not been substantially revised in 1977. The regulation applicable to the tax years at issue here specifies that:

[T]he aggregate of deductions for interest shall be considered related to all income producing activities and property of the taxpayer and, thus, allocable to all the gross income which the income pro-

ducing activities and properties of the taxpayer generate, have generated, or could reasonably have been expected to generate.

Treas.Reg. § 1.861–8(e)(2)(ii) (as amended in 1977). At least one court has held that "the Regulation requires that the aggregate of deductions for interest be allocated ratably to interest income on the same basis as it is allocated to all other income producing activities." *Bowater, Inc. and Subsidiaries v. Commissioner of Internal Revenue*, 108 F.3d 12, 14 (2d Cir.1997), *cert. denied*, 522 U.S. 1046, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998). In other words, interest netting is no longer allowed.

Dresser points out that the Fifth Circuit referred to this version of the regulation in support of its decision in *Dresser*. The court did note that the revised treasury regulations take the approach that money is fungible "[i]n providing for the allocation and apportionment of interest under code section 861 ..." *Dresser*, 911 F.2d at 1135. This principle was central to its concept of business reality. *Id.* at 1135–36. However, the court specifically declined to address "whether interest netting is consistent with the current version of the Treasury Regulations ..." *Id.* at 1134 n. 11. Indeed, the revised regulations use the concept of fungibility to reach the exact opposite conclusion as the *Dresser* court. *See* Treas.Reg. 1.861–8(e)(2)(i). In any event, the plain language of regulation negates any argument in favor of interest netting. *See also Bowater*, 108 F.3d at 15. Economic reality is no longer a relevant consideration.[12]

■ The Court concludes that Dresser is not entitled to net gross interest income against gross interest expense in computing the combined taxable income of its DISC and FSC for the 1984 and 1985 tax years. Rather, only a ratable share of

---

**12.** Dresser also mentions that the IRS took a contrary position in two prior tax court cases involving the 1978–1982 tax years. In both cases, Treasury Regulation 1.861–8(e)(2) was in effect and the IRS allowed interest netting.

(Plf. Motion at 30). However, there is no evidence or argument that this past practice constitutes a waiver on the part of the government.

"gross interest" can be apportioned to these wholly-owned export subsidiaries under 26 U.S.C. § 924(a) and Treasury Regulation 1.861(e)(2). The government's motion for summary judgment is granted on this ground and Dresser's motion is denied.

### B.

Dresser also seeks a refund of deficiency interest for the 1981 and 1984 tax years. The parties agree that Dresser paid a total of $1,552,575 in interest as a result of a $265,109 tax liability for 1981 and a $6,261,397 tax liability for 1984. (Jt. Stipulation ¶¶ 8, 12). However, it accumulated excess foreign tax credits of $265,109 in 1983 and $6,261,397 in 1986 which were carried back to the earlier tax years. (*Id.* ¶¶ 26–27). Since the credits extinguished the underlying tax liability, Dresser claims that it is entitled to a refund of deficiency interest.

### 1.

The issue squarely presented is whether a taxpayer is liable for interest on a tax deficiency when the deficiency is later erased by a foreign tax credit carryback. This precise question was addressed by the Federal Circuit in *Fluor Corporation and Affiliates v. United States,* 126 F.3d 1397 (Fed.Cir.), *reh'g granted,* 132 F.3d 700 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1118, 118 S.Ct. 1057, 140 L.Ed.2d 119 (1998). The *Fluor* court noted the absence of any controlling statutory authority, and examined two analogous Supreme Court decisions.[13] The first case was *Manning v. Seeley Tube & Box Co. of New Jersey,* 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950). There, the Supreme Court considered whether a taxpayer was entitled to a refund of deficiency interest when the carryback of a net operating loss eliminated the deficiency. The Court began its analysis by stating the well-settled principle that "Congress intended the United States

to have the use of money lawfully due when it became due." *Id.,* 70 S.Ct. at 389. It went on to explain that:

> [T]he taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed to the Government for the period it is owed must be answered in favor of the Government.

*Id.* Indeed, to hold otherwise "would be to place a premium on failure to conform diligently with the law." *Id.* at 390. The Court refused to sanction a rule that treated delinquent taxpayers better than taxpayers who complied with their legal obligations by paying their taxes on a timely basis. *Id.*

A similar result was reached in *United States v. Koppers Co.,* 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955). The taxpayer in *Koppers* sought a refund of deficiency interest paid on excess profits taxes. The deficiencies were eliminated when the taxpayer applied for and obtained an adjustment in the average base period net income from which the taxes were calculated. Once again, the Court held that the government was entitled to interest on past due taxes. *Id.,* 75 S.Ct. at 276–77. The Court reiterated that "nothing ... justif[ies] a greater tax advantage to any taxpayer that underpays its correct tax, over one that pays such tax in full when due." *Id.* at 272.

Both *Seeley Tube* and *Koppers* are based on the principle that a taxpayer

---

**13.** The tax code was amended in 1997 to provide that a taxpayer remains liable for deficiency interest even when the deficiency is subsequently eliminated by a foreign tax credit carryback. *See* TAXPAYER RELIEF ACT OF 1997, Pub.L. No. 105–34, 111 Stat. 788 (1997). However, the amendment is not retroactive and does not govern the disposition of this case.

must pay interest on a deficiency until the deficiency is paid or otherwise abated. *See* 26 U.S.C. § 6601(a). Any departure from this principle requires "a clear legislative expression to the contrary." *Seeley Tube*, 70 S.Ct. at 389. The taxpayer bears a heavy burden of showing that the tax relief in question was "necessarily retroactive, extinguishing the deficiency as of the original due date and thus eliminating the interest charges for the corresponding period." *Koppers*, 75 S.Ct. at 272. The *Fluor* court found that the analytical framework of these cases "provide[s] powerful support for the government's position ..." *Fluor*, 126 F.3d at 1400. So does this Court. Therefore, Dresser must show that Congress intended to eliminate interest on a tax deficiency when the deficiency is subsequently extinguished by a foreign tax credit carryback.

a.

Dresser raises three arguments in an attempt to establish its entitlement to a refund of deficiency interest. First, it relies on the carryback provisions of 26 U.S.C. § 904(c). This statute provides, in relevant part:

> [Excess foreign taxes] shall be *deemed taxes paid or accrued* to foreign countries or possessions of the United States in the second preceding taxable year, in the first preceding taxable year, and in the first, second, third, fourth, or fifth succeeding taxable years, in that order ... Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart ...

26 U.S.C. § 904(c) (emphasis added). Dresser emphasizes that foreign tax credits are "deemed taxes paid or accrued" in preceding taxable years. Therefore, the credits should be treated as taxes actually paid in those years. Under this theory, there is no liability for deficiency interest when the underlying tax obligation has been extinguished.

The Court cannot accept this argument. The "deemed paid" language of section 904(c) relates only to the year in which the foreign tax credit will be applied. It does not address when any pre-existing tax deficiency will be eliminated. *See Fluor*, 126 F.3d at 1401. A refund of deficiency interest would be appropriate if the deficiency is deemed to have been eliminated in the carryback year. On the other hand, it would be proper to assess interest for the intervening period if the deficiency remains until the year in which the credit is generated. *Id.* It is not clear which interpretation is correct under the statute.

Dresser argues that the policy behind the foreign tax credit carryback supports its position. It notes that section 904(c) allows taxpayers to "match" foreign taxes against domestic taxes imposed on the same income, even if the income is taxed in different years. Dresser therefore concludes that "[e]limination of deficiency interest achieves the legislative intent to match the U.S. credit for foreign taxes with the U.S. inclusion of foreign income in the U.S. tax base." (Plf. Motion at 36).

This argument is equally unpersuasive. The "matching" policy embodied in section 904(c) speaks only to the effect of the foreign tax credit on the taxpayer's liability for the underlying tax. The fact that Congress wanted to avoid double taxation of income does not necessarily imply that it intended for taxpayers who underpay their taxes to avoid liability for deficiency interest. *Fluor*, 126 F.3d at 1405. To the contrary, the tax code expressly prohibits taxpayers from recovering interest from the government on overpayments that result from the application of foreign tax credits. *See* 26 U.S.C. § 6611(f)(2), *formerly* 26 U.S.C. § 6611(g). This suggests that Congress did not intend to treat the "matching" function of section 904(c) as retroactive for interest purposes. *Fluor*, 126 F.3d at 1405.

The Court concludes that nothing in the language or legislative history of section 904(c) provides the "clear legislative ex-

pression" necessary to override the general principle that the government is entitled to deficiency interest.

b.

Next, Dresser argues that it is entitled to a refund of deficiency interest because foreign tax credits are not specifically mentioned in 26 U.S.C. § 6601(d). This statute provides that a taxpayer remains liable for interest even when its tax liability is reduced by a net operating loss carryback, capital loss carryback, or credit carryback. 26 U.S.C. § 6601(d)(1) & (2). As a consequence of this omission, Dresser concludes that Congress intended to allow a refund of interest where a tax deficiency is subsequently erased by a foreign tax credit carryback.

The Court disagrees. The fact that section 6601(d) speaks to certain types of carrybacks, but not others, does alter the general rule that the government is entitled to interest on delinquent taxes. *See* 26 U.S.C. § 6601(a). In order to overcome this presumption, Dresser must point to a "clear legislative expression to the contrary." The failure of Congress to include foreign tax credits in section 6601(d) does not establish this contrary legislative intent. Indeed, *Seeley Tube* and *Koppers* had recently been decided when the foreign tax credit was created in 1958. It was reasonable for Congress to assume that those cases would apply to analogous carryback provisions. Thus, there was no need for legislation to ensure that interest would be imposed on tax deficiencies that were subsequently eliminated as a result of foreign tax credit carrybacks. *See Fluor*, 126 F.3d at 1404.

c.

Finally, Dresser argues that the IRS took the position for approximately 35 years "that no section 6601(a) interest was payable to the extent that income tax was eliminated by foreign taxes which were deemed paid or accrued by the taxpayer pursuant to section 904(c)." (Plf. Motion at 39). As evidence of this practice, Dresser points to the failure of Treasury Regulation 301.6601–1 to provide for such interest.[14] In addition, the IRS has allegedly computed interest in the manner requested by Dresser in "many" other cases.

None of these arguments are particularly compelling. First, the fact that the IRS did not take a definitive position on this issue in the treasury regulations is not outcome determinative. The Court is "unwilling to treat as established administrative practice what amounts to no more than a failure to advert to the issue at a policymaking level." *Fluor*, 126 F.3d at 1405. Moreover, Dresser presents no evidence to show how interest was computed in other cases. Indeed, it acknowledges that IRS employees did not follow this practice "uniformly." (Plf. Brief at 40).

■ For these reasons, the Court concludes that Dresser is not entitled to a refund of interest on deficiencies that were subsequently eliminated by foreign tax credit carrybacks. The government's motion for summary judgment is granted on this ground and Dresser's motion is denied.

2.

Alternatively, Dresser argues that deficiency interest accrues only until the end of the taxable year in which the carryback was generated. This was the holding in *Fluor*. *Id.* at 1406. The government maintains that interest continues to accrue until the filing date of the return for the

---

**14.** This regulation provides, in relevant part, that:

> The carryback of a net operating loss, net capital loss, investment credit, or work incentive program (WIN) credit shall not affect the computation of interest on any income tax for the period commencing with the last day prescribed for the payment of such tax and ending with the last day of the taxable year in which the loss or credit arises.

Treas.Reg. 301.6601–1(e) (as amended in 1983). The Internal Revenue Manual was not amended to provide for interest on underpayments satisfied with foreign tax credit carrybacks until 1992. *See* I.R.M. § 8712.3.

tax year in which the foreign tax credit arises. This was the holding in *Intel Corporation and Consolidated Subsidiaries v. Commissioner of Internal Revenue*, 111 T.C. No. 4, 1998 WL 430032 (U.S.Tax Ct. July 30, 1998) (No. 23010–89).

As originally enacted, section 6601(d) provided that deficiency interest accrued until the "close of the taxable year" in which the carryover was generated. *Fluor*, 126 F.3d at 1406. The same rule applied to liability for interest on overpayments under sections 6611(f) & (g). *Id.* However, Congress amended these statutes in 1982. The relevant date for calculating interest due on both underpayments and overpayments is now the "filing date for the taxable year" in which the credit arises. *See* TAX EQUITY AND FISCAL RESPONSIBILITY ACT OF 1982, Pub.L. No. 97–248, § 346(c)(1)(A), (B), (D) & (2)(A), (B), 96 Stat. 324 (1982). Despite this amendment, the *Fluor* court "decline[d] the ... invitation to treat that legislative change as if it changed the period for calculating interest under the non-statutory deficiency interest rule applicable to foreign tax carryovers." *Fluor*, 126 F.3d at 1406.

Frankly, this result is perplexing. The Court is unaware of any "non-statutory deficiency interest rule applicable to foreign tax carryovers." The *Fluor* court did not explain the genesis of such a rule, nor do *Seeley Tube* and *Koppers* provide support for its existence. Nevertheless, *Fluor* held that deficiency interest should be calculated through the end of the taxable year when the carryback arises because that was the law in 1958 when the foreign tax credit was enacted. Since the carryover provisions of the tax code were not amended in 1982, the court was unwilling to "attribute to Congress the intention to have the foreign tax carryover timing rules follow the 1982 legislative changes in the rules applicable to other carryovers." *Fluor*, 126 F.3d at 1406.

This Court cannot agree with that conclusion. In 1982, Congress changed the accrual period for underpayments with respect to every type of tax credit specifi-

cally covered by section 6601(d). Similar amendments were made to the accrual period for interest on overpayments, including overpayments generated by the allowance of foreign tax credits. *See* 26 U.S.C. § 6611(f)(1) & (2). Thus, the same accrual rules apply to credits covered by both sections. It seems illogical to suggest that Congress intended for the interest accrual rules to be the same with respect to overpayments and underpayments for every type of credit *except foreign tax credits.* Indeed, the 1997 amendments to section 6601(d) evidence a congressional intent to maintain symmetry between the interest accrual rules. *See* 26 U.S.C. § 6601(d)(2). The Court therefore concludes that deficiency interest accrues until the filing date of the return for the tax year in which the foreign tax credit arises.

### C.

Dresser alleges that a procedure known as "global netting" applies to tax periods where it had both an underpayment and overpayment of tax accruing interest during overlapping periods. (Complaint ¶ 26). The government correctly notes that the tax code did not provide for "global netting" until 1998. *See* INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM ACT OF 1998, Pub.L. No. 105–206, § 3301(c)(2), 112 Stat. 685, *as amended by* Pub.L. 105–277, § 4002(d), 112 Stat. 2681 (1998), *now codified at* 26 U.S.C. § 6621(d); *see also Northern States Power v. United States*, 73 F.3d 764, 768 (8th Cir.), *cert. denied*, 519 U.S. 862, 117 S.Ct. 168, 136 L.Ed.2d 110 (1996). Dresser tacitly concedes this point and has withdrawn its claim for a refund under this theory. (Jt. Stipulation ¶ 30). Accordingly, the government's motion for summary judgment on this ground is denied as moot.

### *CONCLUSION*

The government's motion for partial summary judgment is granted as follows:

(1) Dresser's 1981 refund claim based on the application of a foreign tax credit

carryback from 1983 is barred by 26 U.S.C. § 6512(a);

(2) Dresser's 1982 refund claim based on the application of a net operating loss carryback from 1985 is barred by 26 U.S.C. § 6511(d)(2)(B);

(3) Dresser's 1985 refund claim based on the deduction of acquisition costs is precluded by the doctrine of variance;

(4) The Court lacks subject matter jurisdiction over Dresser's 1986 and 1987 refund claims;

(5) Dresser is not entitled to net gross interest income against gross interest expense in computing the combined taxable income of its DISC and FSC subsidiaries for the 1984 and 1985 tax years;

(6) Dresser is not entitled to a refund of interest on tax deficiencies for 1981 and 1984 that were subsequently eliminated by the application of foreign tax credit carrybacks; and

(7) Deficiency interest continues to accrue until the filing date of the return for the tax year in which the foreign tax credit arises.

Dresser's motion for partial summary judgment is granted as to its claim that the 1984 refund request was timely to the extent of taxes paid in 1993. In all other respects, the motions for partial summary judgment are denied.

SO ORDERED.